CLEMENTS v. FORT WORTH & D. S. P. RY.
CO. (No. 2958.)

Court of Civil Appeals of Texas. Amarillo.
April 18, 1928.

Rehearing Denied June 20, 1928.

1. Eminent domain ⟶170—Proceedings instituted without attempt to agree with owner as to damages are nullity (Rev. St. 1925, art. 3264).

Under Rev. St. 1925, art. 3264, authorizing condemnation proceedings after failure to agree with the owner of land as to the amount of damages, proceedings instituted without attempt to make agreement as to damages are a nullity.

2. Judges ⟶16(1)—Appointment of special judge by Governor without attempt being made by parties to agree on special judge held improper (Const. art. 5, § 16; Rev. St. 1925, arts. 1930, 1931, 3266).

Under Const. art. 5, § 16, and Rev. St. 1925, arts. 1930, 1931, 3266, special judge appointed by the Governor, without any effort having been made between parties to agree on a special judge, held improperly appointed and without authority.

3. Judgment ⟶9—Judgment of special judge, not appointed or selected pursuant to Constitution and statute, is a nullity.

A judgment rendered by a special judge, who has not been appointed or selected in accordance with the Constitution and statutory requirements governing such matters, is a nullity.

4. Judges ⟶16(1)—Appointment of special judge is invalid if conditions required by Constitution and statute do not exist.

Before a special judge can be appointed or selected, the conditions pointed out by the Constitution and statute must exist or the appointment is invalid.

5. Eminent domain ⟶228—Appointment of commissioners without giving landowner opportunity to agree thereon held irregular (Rev. St. 1925, art. 3264, subd. 2).

Appointment of commissioners to value property in eminent domain proceedings without giving landowner an opportunity to agree upon commissioners held irregular under Rev. St. 1925, art. 3264, subd. 2.

6. Eminent domain ⟶112—That construction of railroad will cause lakes or depressions, result in overflowing land, should be considered on question of damages.

That construction of railroad across property with cuts and fills will create lakes or depressions, cause drainage, and result in overflowing land, should be considered by jury in assessing damages.

7. Eminent domain ⟶102—Inconvenience in communicating between tracts of land divided by railroad should be considered on question of damages to land not taken.

That construction of railroad diagonally across farm will render communication between the different facts dangerous and inconvenient for owner and livestock should be considered on question of damages to land not taken.

8. Eminent domain ⟶253(1)—Error, if any, in denying change of venue need not be considered on appeal, where proceedings are void for other reasons.

Error, if any, in denying defendant's change of venue in eminent domain proceedings, need not be considered on appeal, where entire proceedings are void for other reasons.

Appeal from Castro County Court; J. F. Easter, Judge.

Eminent domain proceedings of the Fort Worth & Denver South Plains Railway Company against Solon Clements. From a judgment fixing the amount of defendant's damages, he appeals. Reversed, and condemnation proceeding set aside, and cause dismissed.

Reeder & Reeder, of Amarillo, and Dennis Zimmermann, of Tulia, for appellant.

Mark Cowsert, of Dimmitt, and Carl Gilliland, of Hereford, for appellee.

HALL, C. J. This proceeding was instituted May 3, 1927, in name of the appellee, railway company, against the appellant, Clements, for the purpose of condemning a right of way over three certain sections of land belonging to appellant and situated in Castro county.

On the same day, County Judge W. R. Avery certified his disqualification to try the case, and on May 7, 1927, the Governor, acting upon the certificate, appointed Hon. J. F. Easter as special judge to try this and other cases mentioned in the certificate. On May 12, 1927, Easter took the oath as special judge, and on the same day appointed Perry Graham, Sid Sheffy, and Ester Noble special commissioners to appraise the property and assess the damages. The commissioners so appointed were duly sworn on the same day, and issued a notice to appellant naming the 20th day of May as the day for hearing, which notice was served on the appellant on May 14, 1927.

Before the hearing on May 20, 1027, appellant filed and presented to Special Judge Easter his exceptions to the special judge's jurisdiction, based upon the following grounds:

(1) That no law now exists under which appellee, railway company, can condemn private property for railway purposes.

(2) That no effort had been made by the railway company prior to the date upon which said exceptions were filed to agree with appellant upon the amount of his damages.

(3) That no attempt was ever made by the railway company to agree with appellant on a special judge to try the cause.

(4) That the proceeding is not, in fact, one instituted by the railway company to condemn property for railway purposes, but is a proceeding by a local guaranty committee.

These exceptions were overruled by the special judge upon the ground that they were premature and irregularly presented at that time, and should be withheld until a later date.

On the same day, the appellant filed and urged objections to the commissioners which had been appointed by the special judge, such objections being, in substance, as follows:

(1) That the said special judge had no power and no authority to appoint said commissioners, because, prior to the appointment of said commissioners, no bona fide effort had been made by the railway company or any one else to agree with the appellant as to the damages to his land and the value of the land to be actually taken for right of way purposes.

(2) Because no effort was made by the railway company or any one else to agree with appellant on a special judge to try this cause, prior to the time the disqualification of the regular judge was certified to the Governor and the special judge appointed.

(3) Because Perry Graham, one of the commissioners appointed, is a nephew of C. F. Kerr, and the said Kerr is bound by a contract, with others known as the guaranty committee, to procure, pay for, and secure for the railway company the right of way and to pay all the expenses and damages necessary to procuring the same.

(4) Because Sid Sheffy, one of the commissioners, is a brother of Ray Sheffy, and that Ray Sheffy is on the guaranty committee and bound to pay for and secure the right of way for the railway company.

(5) Because Commissioner Ester Noble is a son of A. G. Noble, and the latter is on said guaranty committee, and is bound, with the other members of the committee, to secure and pay for the right of way for the railway company,

These exceptions and objections were also overruled by the special judge, upon the ground that they were presented at the wrong time and should come before him at a later date when the case should be before him on appeal.

On May 20, 1927, the commissioners so appointed made their report, awarding appellant $1,800, that being the value of the land taken for and included in the right of way.

On May 28, 1927, the appellant filed his exceptions to the award of the commissioners, which are, in substance, as follows:

(1) There is no law authorizing condemnation of private property for railway purposes in Texas.

(2) No bona fide effort of any kind was ever made by appellee, prior to the institution of these proceedings, to agree with appellant upon the amount of damages.

(3) Because no bona fide effort was made by the railway company, prior to the appointment of said special judge, to agree with appellant on a special judge to appoint appraisers and try the cause.

(4) Because this proceeding is, in fact, one prosecuted by a local guaranty committee in the name of the railway company, and is not, in fact, a proceeding by the railway company.

(5) Because the special judge herein appointed commissioners to appraise appellant's property and assess his damages without any effort having been made by the appellee, railway company, or the guaranty committee, to agree with him upon the amount of his damages.

(6) Because the commissioners appointed by the special judge were not disinterested persons, as required by law, and were not qualified to act as appraisers for the following reasons: (a) Commissioner Perry Graham is a cousin of C. F. Kerr, who is a member of the guaranty committee; (b) Commissioner Sid Sheffy is a brother of Ray Sheffy, a member of the guaranty committee; and (c) Commissioner Ester Noble is a son of A. G. Noble, who is another member of the Guaranty Committee.

(7) Because the amount awarded for the value of the land actually taken is grossly inadequate and unjust and is not supported by the evidence.

(8) Because the whole proceeding to date is not authorized by law and is contrary to law and is void.

On June 22d, at a regular term of the court, in addition to the exceptions to the commissioners' report, appellant filed another motion to quash and set aside the entire proceedings upon the following additional ground:

(1) Because a guaranty contract is in existence, signed by Bruce McLean and 34 other citizens of Castro county, wherein said guaranty committee have bound themselves jointly and severally to procure the property of this appellant, as well as the right of way across other property through Castro county, paying all expenses and damages incident thereto, and to deliver the title to such right of way to the railway company.

These exceptions and motions were set down for hearing and heard by the special judge on August 1, 1927, and were in all things overruled by the court, to which the appellant duly excepted.

On June 22, 1927, the appellant filed his original answer, consisting of a general demurrer, general denial, and setting out in detail how his land would be cut into inconvenient shape, alleging the value of the land taken, the damages to the land not taken, and prayed that the appellee take nothing, and, in the alternative, for the amount of his damages.

On August 1, 1927, the case was tried and the issues of fact submitted to a jury, the findings being, in substance, that the land actually taken and included in the right of way was of the value of $1,472.55, and that the remainder of the land not taken was not damaged in any amount. From a judgment entered in accordance with such verdict, this appeal is prosecuted.

[1] The first contention to be considered is that because no effort was made by the appellee to agree with appellant upon the amount of his damages, prior to the time the proceedings to condemn the land were instituted, the court had no jurisdiction. We sustain this contention. R. S. art. 3264, provides that when a party entitled to condemn property and "desiring to condemn the property after having failed to agree with the owner of the land on the amount of damages shall file a statement in writing with the county judge of the county in which the land or a part thereof is situated," etc.

The party seeking to condemn is required, as a condition precedent to the institution of proceedings for that purpose, to make a bona fide effort to agree with the owner of the land upon the amount of his damages. The purpose of this rule is to save time and expense incident to a condemnation proceeding, where an agreement is possible. As stated in 2 Nichols on Em. Dom. (2d Ed.) 1026, § 377:

"It is, of course, perfectly competent for the Legislature to grant the power of eminent domain subject to the condition that the required land cannot be obtained by purchase, and in such case, unless there is a bona fide attempt on the part of the condemning party to induce the owner to sell the land at a reasonable figure, the condition under which the power is granted is not fulfilled and in such case any attempted exercise of eminent domain is unauthorized and consequently, void of no effect. * * * Under such statutes, when the sole authority to exercise eminent domain is given in this manner, it is generally held that a bona fide attempt to purchase the land by agreement between the parties, and a failure so to do is a condition precedent to the initiation of condemnation proceedings, and that the failure to comply with this requirement renders any subsequent proceedings void."

The rule is announced in 2 Lewis Em. Dom. (3d Ed.) § 497, in the following language:

"Statutes conferring the power of eminent domain usually require that an attempt shall be made to agree with the owner of property desired before instituting proceedings to condemn it. In whatever form of words this direction is couched, it is generally held to be imperative and a condition precedent to the exercise of compulsory powers. It is generally held that the inability to agree should be alleged and proven. * * * The allegation may, of course, be controverted, and if disproven, the proceedings must be dismissed. It has been held that the objection may be taken at any stage of the proceedings and will be good ground for setting aside an award or quashing the proceedings on certiorari. If the record fails to show such inability to agree, the proceedings are generally held to be void collaterally."

The uncontradicted evidence in this case shows that neither the railroad company nor any one authorized to represent it ever made any attempt to agree with the appellant upon the amount of his damages, prior to the institution of the proceedings. It does appear that several members of the guaranty committee visited appellant at his home in Plainview for the purpose of inducing him to donate the right of way through his three sections of land, but they were presumably acting in their own interests, since they were bound, under their agreement with the railroad company, to secure this right of way for the company at their own expense.

It is true that there are cases which hold that where it is evident, from the entire record and proceedings, that the parties could not have agreed upon the amount of damages, it is not necessary to make a formal effort to agree; but we have no such case before us, and because the record shows that no attempt was made in this case, prior to the institution of the proceedings, to agree upon the amount of damages, the proceedings were prematurely instituted, and the judgment must be reversed and the entire proceedings dismissed. Porter v. City of Abilene (Tex. Sup.) 16 S

W. 107; Barnes v. Chicago, R. I. & T. Ry. (Tex. Civ. App.) 33 S. W. 601; City of Dallas v. Crawford (Tex. Civ. App.) 222 S. W. 305; City of Dallas v. Atkins (Tex. Civ. App.) 197 S. W. 593; Rabb v. Canal Co., 62 Tex. Civ. App. 24, 130 S. W. 916; Morgan v. Oliver, 98 Tex. 218, 82 S. W. 1028, 4 Ann. Cas. 900.

[2] In view of another trial, it is proper for us to discuss some other questions presented by this appeal. We think the appellant's contention, by which he attacks the appointment of the special judge, should also be sustained.

It is provided in the judiciary article of the Constitution, viz. article 5, § 16, that:

"When the judge of the county court is disqualified in any case pending in the county court, the parties interested may, by consent, appoint a proper person to try said case, or, upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law."

'In compliance with this provision of the Constitution, the Legislature has enacted R. S. art. 1930, which provides:

"When a judge of the county court is disqualified, the parties may, by consent, appoint a proper person to try such case."

And article 1931, which provides:

"Whenever a judge of the county court is disqualified to try a civil case pending in the county court, and the parties shall fail at the first term of the court to agree upon a special judge, the judge shall certify his disqualification to the Governor and the failure to agree upon another to try the same, whereupon the Governor shall appoint some person, learned in the law to try such case."

The uncontradicted evidence discloses that no effort was made by any one to agree with the appellant upon a special judge to try this case, and that the regular judge, being a member of the guaranty committee, without consulting any one except the attorney for the guaranty committee, certified his disqualification to the Governor, naming the instant case and two others in the certificate, and that the Governor appointed Judge Easter to try said cases. While the certificate to the Governor states that the parties have failed to agree upon a special judge to try the cases, the uncontradicted evidence shows not only a failure to agree, but a failure to attempt to agree.

[3, 4] The rule is that a judgment rendered by a special judge who had not been appointed or selected in accordance with the constitutional and statutory requirements governing such matters is an absolute nullity, and that before a special judge can be appointed or selected, the conditions pointed out by the Constitution and the statute must exist before such selection or appointment of the special judge is valid. Bailey et al. v. Trip-

lett Bros. (Tex. Civ. App.) 278 S. W. 250; Summerlin v. State, 69 Tex. Cr. R. 275, 153 S. W. 890; Dunn v. Home National Bank (Tex. Civ. App.) 181 S. W. 699; Pickett v. Michael (Tex. Civ. App.) 187 S. W. 426; T. & P. Coal Co. v. Ready (Tex. Civ. App.) 198 S. W. 1034; Cohn v. Saenz (Tex. Civ. App.) 194 S. W. 685.

Revised Statutes relating specifically to this matter by article 3266 provide:

"When the county judge is disqualified to act in the case, and the parties fail to agree upon a special judge, he shall certify such disqualification upon the petition or statement filed with him, and file it with the county clerk, who shall make a certified copy thereof and of the indorsement thereon and forward the same to the Governor, who shall appoint some person learned in the law to act as special judge."

This article contemplates that there must first be a bona fide attempt to agree upon a special judge, and that the parties have failed to agree, before this certificate can properly be made, and, we think, clearly provides the procedure for the appointment of a special judge in such cases. It has not been complied with in the instant case. It follows, from what has been said, that Judge Easter was not a de jure judge, and had no authority to appoint commissioners to assess the damages. It also follows that the commissioners acted without authority. R. S. art. 3264 (2) provides for the appointment of three disinterested freeholders as commissioners "giving preference to those that" the parties may agree upon.

[5] The record shows that all three of the commissioners were recommended by two members of the guaranty committee and were related to certain members of the guaranty committee within the third degree, and, because it is not shown that appellant had an opportunity to agree upon commissioners, we think, for this reason, their appointment was at least irregular and the objections to their appointment should have been sustained.

[6, 7] As stated above, the jury failed to allow any damages for the land not taken. Exactly how they arrived at such a conclusion the record does not disclose. The maps in evidence show that the proposed line of road enters each of the three sections of land a few varas west of its southeast corner and passes out of such section a few varas west of its northwest corner, thus cutting each of the sections practically into two triangular bodies of land. The maps disclose that there are cuts, fills, and culverts at intervals through the sections, and that there is considerable farming land upon two of the sections. There seem to be, according to the plat, two lakes or depressions, which, in the nature of things, will cause drainage and result in overflowing land which would probably not be affected but for the construction of the road. This will affect land not included within the right of way and

should have been considered by the jury upon the issue of damages to the land not taken. Harris County v. Gerhart, 115 Tex. 449, 283 S. W. 139. The facts that the road, when constructed, will cut the sections into inconvenient shape for cultivation or pasturage, rendering communication between different parts of the same section dangerous and inconvenient, both for the owner and his live stock, and that such damages will continue as long as the land and the railroad are there, seem also to have been ignored by the jury, else they could not have concluded that the appellant would suffer no damages to the land not taken. These are matters which should have been considered. Hamilton County v. Garrett, 62 Tex. 602; I. & G. N. Ry. Co. v. Pape, 62 Tex. 313; McDonald v. Texas & P. R., 1 Posey Unrep. Cas. 191; Morris v. Coleman County (Tex. Civ. App.) 28 S. W. 380; T. & P. Ry. v. Durrett, 57 Tex. 48.

[8] Appellant complains of the court's action in denying his application for a change of venue. For the reasons above stated, if the application had been granted, the order would have been void because of the court's want of authority to enter any order or judgment in the case. It is therefore not necessary for us to discuss this contention further than to say that if it be admitted that the evidence introduced at the preliminary hearing was insufficient to show that appellant could not probably get a fair and impartial trial, according to law, in Castro county, the record is full of facts which indicate rather forcibly that he did not get such a trial.

For the reasons first stated, the judgment is reversed, the condemnation proceeding is set aside, and the cause dismissed.