## TEXAS ELECTRIC SERVICE CO. v. WELLS et ux.   (No. 11990.)

Court of Civil Appeals of Texas. Fort Worth.
June 2, 1928.

Rehearing Denied June 30, 1928.

**1. Trial ⬯85—Overruling objection to testimony on certain grounds held not error, where part of testimony was not subject to objection.**

Where objection was made to entire testimony of witness on certain grounds, and part of testimony was not subject to objection, there was no reversible error in action of court in overruling objection; it being duty of counsel, and not of court, to separate the proper from the improper, and specify particular testimony subject to objection.

**2. Eminent domain ⬯262(5)—Submitting issue of damages to ascertain value of land immediately prior to and after condemnation, though improper, held harmless (Rev. St. 1925, art. 3265).**

Submission of issue in condemnation proceeding relative to damages to ascertain value of land immediately prior to condemnation and immediately after erection and construction of line of wires thereover, though not strictly in accord with Rev. St. 1925, art. 3265, *held* harmless, in view of testimony that entire tract was damaged by land actually taken and market value thereby depreciated.

**3. Eminent domain ⬯93—Jury, in estimating damages, could properly consider damage to landowner resulting from vehicles used in constructing power line, such matters not being speculative.**

Jury, in estimating damages in condemnation proceeding, had right to take into consideration the fact that soil was sandy, and that washes had already occurred as result of tracks made over land by vehicles used in constructing electric power line, in that such matters were not of speculative character.

**4. Eminent domain ⊚⟹150—$1,000 held not excessive for easement for power line over strip 100 feet wide and 1,456 feet long.**

Award of $1,000 for easement for power line over strip 100 feet wide and 1,456 feet long, whereon there was constructed three H-frames, consisting of two poles set 14 feet apart and connected at the top with a cross-arm supporting three electric wires, *held* not excessive.

**5. Eminent domain ⊚⟹137—Jury, in assessing damages, could consider that power line right of way separated one corner of tract from remainder.**

Jury, in determining amount of damages in condemnation proceeding, had right to consider that power line right of way separated one corner of tract from the remainder, leaving that corner in a triangular shape.

**6. Eminent domain ⊚⟹239—Argument of landowner's counsel as to right to take land without paying fair price and unreasonableness of making poor wretch bear whole loss held not error.**

In condemnation proceeding, remarks of landowner's counsel in argument to jury relative to fact that land could not be taken without paying a fair price therefor, and that power company was not constructing line for purpose of building up country, and that it would be unfair to make this poor wretch bear the whole loss, *held* not, when considered in connection with evidence proving damages to land, to constitute error.

Appeal from Young County Court; W. F. Parsley, Judge.

Condemnation proceeding by the Texas Electric Service Company against M. F. Wells and wife. Judgment in favor of defendants on plaintiff's objections to amount of award, and plaintiff appeals. Affirmed.

Fred T. Arnold and Marshall & King, all of Graham, for appellant.

W. L. Scott, of Olney, for appellees.

DUNKLIN, J. M. F. Wells owned a tract of 120 acres of land, on which he maintained his home, situated in Young county. The Texas Electric Service Company, a corporation engaged in the business of supplying electric current to its patrons invested with the right of eminent domain, instituted condemnation proceedings, as plaintiff, against Wells and his wife, Rosa Wells, as defendants, to acquire a right of way over their land. In compliance with the statutory requirements in such cases made and provided, the Texas Electric Service Company filed its petition for condemnation with the county judge of Young county, who appointed commissioners to assess damages to the land resulting from the granting of the easement and right of way contemplated.

After due notice to all of the parties, and after the landowners filed their answers to the condemnation proceedings, a hearing was had before the commissioners, who awarded the landowners the sum of $1,000 as damages for the right of way and easement. The right of way condemned consisted of a strip of land running across the tract near the east side thereof, diagonally northwesterly and southeasterly. The strip was 100 feet wide and 1,456 feet long.

Plaintiff filed objections to the award so made by the commissioners, in accordance with the provisions of article 3266, Rev. Civ. Statutes of 1925, and, having taken possession of the right of way, deposited in the county court double the amount of damages so assessed and executed a bond for the payment of any further costs that might be adjudged against it, all in compliance with article 3268, Rev. Civ. Statutes of 1925.

Plaintiff's objections to the award were, in substance, that the same was excessive, unreasonable and not based on the actual damages sustained to the land by reason of the erection of its line across the defendants' land. The issue thus made by plaintiff's objections, and due answers thereto by the defendants, were heard and determined by the court with the aid of a jury, who assessed defendants' damages in the sum of $1,000, the same amount as the commissioners had awarded, and from a judgment in favor of the defendants, based on the verdict, plaintiff has prosecuted this appeal.

Plaintiff's electric line across the defendants' land was constructed as follows: Three wires were strung on three H-frames. Each frame consisted of two poles 50 feet in length, buried 9 feet in the ground, extending 41 feet high above the ground, set 14 feet apart, and connected at the top with a cross-arm supporting three electric wires, one at each end of the cross-arm and one in the middle. These H-frames were approximately 500 feet apart; one being 175 feet from the defendants' north line, another 230 feet from their south line, and the middle frame being approximately midway between those two frames.

Article 3265, Rev. Civ. Statutes of 1925, prescribes the rule for assessing damages in condemnation proceedings, and subdivisions 3 and 4 of that article read as follows:

"3. When only a portion of a tract or parcel of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner; whether the remaining portion is increased or diminished in value by reason of such condemnation, and the extent of such increase or diminution, and shall assess the damages accordingly.

"4. In estimating either the injuries or benefits, as provided in the preceding article, such injuries or benefits which the owner sustains or receives in common with the community generally and which are not peculiar to him and con-

nected with his ownership, use and enjoyment, of the particular parcel of land, shall not be considered by the commissioners in making their estimate."

The defendants assumed the burden of proof, and were granted the right to open and conclude the evidence and argument. They introduced 11 witnesses to prove alleged damages to their land, resulting from the condemnation. After the defendants had closed the introduction of such evidence, and rested their case, the plaintiff filed the following written motion:

"Now at this the close of all the testimony by defendant in this cause, and after defendant had rested his case, comes the plaintiff and respectfully moves the court to strike out and withdraw from the jury the testimony of each and all of the following witnesses: J. T. Richardson, J. T. Hunt, W. M. Thomas, G. H. Roach, W. R. Farmer, Cherry Roach, Sherley White, E. F. Farrow, Andy White, O. S. Perkins, and M. F. Wells—relative to the market value of the land in question after the high wire or high line was constructed across it, for the reason that the market price placed by witnesses on said land was speculative, uncertain, remote, and unreliable, and is not based upon any fact or facts or state of facts, but is purely an arbitrary value placed by said witnesses on the land, and is an attempt to show a damage that does not exist, or set of facts in existence at the time such arbitrary value was arrived at.

"The plaintiff further moves the court to strike out and withdraw from the jury testimony of each and all of said witnesses for the defendant, to wit, J. T. Richardson, H. T. Hunt, W. M. Thomas, G. H. Roach, W. R. Farmer, Cherry Roach, Sherley White, E. F. Farrow, Andy White, O. S. Perkins, and M. F. Wells, which shows or tends to show that the damage was caused to the land by reason of the actual construction of the high line across the land, and any and all damages to the land or crops or enjoyment of the land by reason of the construction or maintenance of the high line, the fences, or the inspection of the right of way, because same is speculative, remote, and proof is immaterial, and is damage for construction which is not recoverable in this suit.

"Because no special damages were alleged, and no proper allegations to sustain any consequential damages, if any could arise, as the damages are merely for an easement across the land.

"Because the witnesses are not qualifying as experts to testify as to the value of the land either before or after such line was built."

That motion was overruled, to which plaintiff excepted. Plaintiff then introduced its testimony in rebuttal of that already introduced by the defendants, and after the close of its testimony it filed another motion to strike out all of the testimony of defendants' witnesses, that motion being in words and figures the same as the motion above quoted. That motion was likewise overruled, and plaintiff excepted to that ruling.

Based on assignments of error germane thereto, appellant has presented several propositions, in all of which it is claimed that the court erred in refusing to exclude the testimony referred to in those two motions.

[1] It is a familiar rule that, if objection is made to the entire testimony of a witness on certain grounds, and a part of the testimony is not subject to the objection, there is no reversible error in the action of the court in overruling the objection; it being the duty of counsel, and not of the court, to separate the proper from the improper, and specify that particular testimony which is subject to the objection. G., H. & S. A. Ry. Co. v. Gormley, 91 Tex. 393, 43 S. W. 877, 66 Am. St. Rep. 894; Jamison v. Dooley, 98 Tex. 206, 82 S. W. 780.

We deem it unnecessary to review the testimony of defendants' witnesses, to which objection was made. It is sufficient to say that, at all events, the greater portion of such testimony was not subject to the objection on the grounds stated in appellant's motions to exclude. Accordingly, all assignments of error and propositions based thereon, relating to the failure of the court to grant appellant's motions to exclude the testimony, are overruled.

The case was submitted to a jury on two special issues, which, with the findings of the jury thereon, are as follows:

"Special issue No. 1: What was the reasonable fair market value, if any, of the defendant's land just immediately prior to the condemnation of same by the plaintiff in this case? Ans. $9,000.00.

"Special issue No. 2: What was the reasonable fair market value of the defendant's land immediately after the erection and construction of the plaintiff's line of wires on and over same? Ans. $8,000.00."

[2] The rule of decisions, aside from the specific provisions of article 3265, is that the proper manner of submitting the issue of damages in a case like this is to require the jury to find the value of the land actually taken in condemnation, and the value of the tract not taken before the condemnation and its value thereafter. It will be observed, of course, that the issues submitted by the trial court were not in accord with that rule of decisions. However, it cannot be denied that the findings of the jury in a general way included the same elements of damages that would have been included, if the issues had been submitted according to that rule of decisions. We do not believe that the failure of the trial court to submit the issues in this case in accordance with that rule of decisions resulted in any injury to appellant, and therefore, if there was error in that ruling, it was harmless, since, according to the testimony of nine of defendants' witnesses, the entire tract was damaged by the land actually taken and the necessary construction and operation of the right of way across defendants' land, and the market value of the en-

tire tract was thereby depreciated from $15 to $30 an acre.

The testimony was practically undisputed that the market value of the land before the taking was approximately $100 an acre, and the land actually included in the right of way was slightly in excess of three acres. If the inference be indulged that the jury allowed $300 for the right of way, then it follows that $700 was found to be the difference in the value of the remaining portion of the tract immediately before and after the condemnation. That amount would be far less than the damages estimated by any of defendants' witnesses. Furthermore, the amount of damages assessed by the jury would be a little over $8 an acre for the entire tract. In other words, it must be assumed that the jury attached no weight to the testimony of defendants' witnesses, since, according to one of those witnesses, the land was not damaged, but was benefited, by the erection of plaintiff's line across it; and, according to the testimony of others, the damage sustained by the defendants, aside from the value of the land which was actually used for digging holes, in which the poles were erected, and consisting of a small fraction of an acre, was negligible in amount. Our conclusion on the issue now under discussion is supported by the decision in the case of Texas Power & Light Co. v. Jones (Tex. Civ. App.) 293 S. W. 885, and the reasoning there advanced we think is applicable to this case and is sound.

[3] By numerous requested issues, appellant sought to have the jury instructed that they could not take into consideration any damage to defendants' land resulting from construction, operation, and maintenance of the line. In the discussion of those assignments, addressed to the refusal of such instructions, appellant has referred to the testimony of some of defendant's witnesses, to the effect that defendant's land was sandy soil, with sloping surface, and that washes had already occurred as the result of tracks made over the land by vehicles used by appellant's employees in constructing the line. According to the testimony of those witnesses, the same result would necessarily follow from like use of the right of way in the future in the maintenance of the same line. We believe that the jury had the right to take into consideration such matters in estimating the damages, and that the same were not of that speculative character, such as is condemned in such decisions as Texas Pipe Line Co. v. Hildreth (Tex. Civ. App.) 225 S. W. 583, and Illinois Power & Light Co. v. Peterson, 322 Ill. 342, 153 N. E. 577, 49 A. L. R. 692.

If the proof had shown that such injuries to the land would result only from the failure of appellant to exercise ordinary care, then, under authorities cited by appellant, the same could not have been taken into consideration. Some of those authorities are Kirby v. Panhandle & G. Ry. Co., 39 Tex. Civ. App. 252, 88 S. W. 281; Stephenville N. & S. Ry. Co. v. Moore, 51 Tex. Civ. App. 205, 111 S. W. 758. But, if those injuries are necessary incidents to the enjoyment of the easement, as the evidence tended to show, then the same may be taken into consideration, as pointed out in Jefferson County Traction Co. v. Wilhelm (Tex. Civ. App.) 194 S. W. 448. Appellant's requested instructions ignored that distinction, and were to the effect that such facts could not be taken into consideration, in any event, and therefore they were properly refused. Indeed, that instruction was included in practically all the issues requested by appellant as a qualification thereof, which vice of itself was sufficient to warrant the court's action in refusing to submit them. Other issues requested were merely of an evidentiary character, rather than substantive issues to be found by the jury.

[4, 5] Nor can we say that the award made by the jury was so excessive as to require a reversal of the judgment. As pointed out already, the amount allowed was far less than the estimates made by any of defendant's witnesses, all of whom showed themselves to be familiar with the value of the land in that vicinity, and with the kind and quality of defendants' land in particular. Furthermore, the majority of the commissioners assessed the same damages as did the jury. Another fact which the jury had the right to consider was the fact that the appellant's right of way separated one corner of the tract from the remainder, leaving that corner in a triangular shape, which fact the jury had a right to consider in estimating the damages to the land not taken.

[6] Another assignment is presented to the remarks made by defendants' counsel in his opening argument of the case to the jury. Without undertaking to set out the argument in full, we think it sufficient to say that it was to the effect that neither public service corporations, nor counties, nor the state, can take a citizen's land without paying a fair price therefor, and that the plaintiff was not constructing its line for the purpose of building up the country, but for the purpose of making money out of its line, and that it ought to pay fair compensation therefor. Counsel further used this language:

"I state it would be unfair, if this was a public road, to make this poor wretch bear the whole loss, but it ought to be borne by all the people or taxpayers."

Of course, the language quoted was foreign to any issue in the case, since the defendant's land was not being taken for a public road, and the jury reasonably could not have considered it as applicable to the issues of fact to be determined by them. The statement

made, to the effect that private property cannot be taken by the state, county, or any public service corporation without paying a fair price therefor, was the statement of a fact well known to every one, and we fail to perceive how it could have tended to prejudice the jury against the plaintiff. In appellant's brief special complaint is made of the remark that appellant "was not building the line to build up the country, but was building it to make money out of it," was especially hurtful and prejudicial to appellant. That likewise was a fact well known to the jury. In the argument presented in appellant's brief, no reference is made to counsel's designation of the defendant as "that poor wretch," as tending to excite sympathy for him, and as being unsupported by any evidence of poverty of the defendant.

In view of the evidence introduced by defendants to prove damages to their land, considered in connection with evidence offered by plaintiff on the same issue, we believe it is reasonably apparent that the argument complained of did not have the effect to prejudice the jury in favor of defendants and cause them to render a verdict different from that which would have been rendered in the absence of such argument.

For the reasons noted, all assignments of error are overruled, and the judgment is affirmed.