## TEXAS ELECTRIC SERVICE CO. v. PERKINS et ux. (No. 12031.)

Court of Civil Appeals of Texas. Fort Worth. Oct. 20, 1928.

Rehearing Denied Dec. 8, 1928.

Fred T. Arnold and Marshall & King, all of Graham, for appellant.

W. L. Scott, of Olney, for appellees.

CONNER, C. J. In May, 1927, O. S. Perkins and wife, L. E. Perkins, owned and occupied as their homestead 160 acres of land in Young county, over which the appellant corporation sought a right of way for its lines, to be used in the transmission of electric power. Pursuant to the procedure prescribed under title 52 of our Revised Statutes relating to eminent domain, it gave notice and secured the appointment of qualified commissioners to assess the damage. The commission on the 10th day of May, 1927, met and assessed the damage to Perkins and wife occasioned by the desired line, at the sum of $1,250. The appellant corporation, being dissatisfied with the award, followed the prescribed procedure in such cases and brought the case to the county court, where a trial was had before a jury. The jury, in answer to special issues, assessed appellee's damage in the sum of $3,518, following which the court entered its judgment vesting in the appellant corporation the right of way sought, with a further decree that appellees recover of appellant the amount of damages found by the jury. From the judgment so rendered, appellant has duly prosecuted this appeal.

By some 26 propositions, appellant invokes our ruling on various proceedings in the trial below, but which we find unnecessary to discuss, in view of the fact that the record discloses, as we think, a fundamental error which will require a reversal of the judgment.

It is conceded that the appellant company is duly incorporated and entitled to exercise the power of eminent domain by condemnation of a right of way over appellees' premises. But there is a fatal defect in the petition for, and in the judgment granting, the right. The petition thus describes the land sought to be condemned:

"Said lines are to be located, erected, maintained and operated over, across, upon and through said land as follows: Beginning at survey station 2546 plus 25 same being a point in center line of fence running east and west between the lands of O. S. Perkins and M. F. Wells the same being 666 feet west of the O. S. Perkins southeast corner. Thence north 20 degrees 40 minutes west 2152 feet to survey station No. 2567 plus 77 to center of fence dividing the lands of O. S. Perkins and C. H. Sanford, said point being 1436 feet west of the northeast corner of the O. S. Perkins land.

"Said line will be constructed substantially as follows: 4 'H' frames and 2 guys will be erected. Said 'H' frames each consisting of two poles and not exceeding 22 inches in diameter at the ground line, and 50 feet in length erected in an upright position to a depth of not exceeding 9 feet and not exceeding fifteen feet apart with cross arms not exceeding (2) two in number to each 'H' frame and not exceeding twenty feet in length, fastened upon 'H' frames are right angles to the direction of said lines at a height of not less than forty feet above the surface of the ground with metallic wires not exceeding six (6) in number to be from 'H' frame to 'H' frame and sustained in the air by attachments to said cross arms, together with such poles, braces, screws, pins, insulators and other fasteners, appliances and attachments as may be necessary and proper for attaching said cross arms to said poles, and said wires to said cross arms and poles to the ground.

"Guy wires may consist of metallic wires or rods not exceeding one inch in diameter and such devices as may be proper for attaching or fastening same to said poles or other poles of said lines and thence to the ground. The devices for fastening and holding said guy wires into the ground not to occupy a space of ground more than three (3) feet square, and not more than fifteen (15) feet deep, and such anchors when finally located to be not less than five feet below the surface of the ground.

"For clearer information as to the construction of said lines petitioner hereto attaches and refers to the same as a part hereof, a blue print or plat giving the substantial location and construction of said line across the land above described which is marked Exhibit 'A'; that said land will not be fenced or enclosed by petitioner, and no uses thereof is to be made by the petitioner ex-

cept for the erection of said poles, lines, or wire and guy wires, and that the operation and maintenance thereof and the use of said land by the owner thereof is not to be obstructed or interfered with except so far as this may be done by said poles and the construction and maintenance of operating said lines, and except that no growth or obstruction is to be permitted within such proximity to said lines as to endanger the same by fire, storm or otherwise, or to cause the same to become dangerous in any wise to life or property; and for this purpose and reason it will be necessary to remove and thereafter prevent the growth of such trees, limbs, or branches as may in any way or in any extent now endanger the same or cause the same to become dangerous by further growth or otherwise."

The exhibit referred to in the petition merely shows a straight line across appellees' premises with the designation of the location of the poles, guy wires, etc. There is no designation or description of the area on the two sides of the straight line that may be necessary for use or occupancy during the construction or maintenance of the line; and appellant's construction and limitation of its petition, from which we have quoted, is indicated by one of its exceptions to appellees' answer, which reads as follows, to wit:

"The defendant's answer is insufficient for the reason that the same alleges and assumes that a right of way across said land 2152 feet long and 100 feet wide will be taken and that the same covers and includes 4.88 acres of land whereas the only thing sought in said condemnation as shown by the plaintiff's petition is an imaginary line 2152 feet long, save and except that part of the ground that will be actually occupied by four H frames and 2 guys, which will occupy less than $\frac{1}{200}$ of an acre."

Article 3264, Rev. Statutes of 1925, so far as necessary to quote, reads as follows:

"The exercise of the right of eminent domain shall in all cases be governed by the following rules:

"1. When real estate is desired for public use by the State or by a county, or a political subdivision of a county, or by a city or town, or by the United States Government, or by a corporation having the right of eminent domain, the party desiring to condemn the property after having failed to agree with the owner of the land on the amount of damages shall file a statement in writing with the county judge of the county in which the land or a part thereof is situated. It shall describe the land sought to be condemned, state the purpose for which it is intended to be used, the name of the owner if known, and that the plaintiff and the owner have been unable to agree upon the value of the land or the damages."

It is apparent, we think, that appellant's petition fails to comply with the article quoted in the matter of describing the land sought to be condemned. An area greater than $\frac{1}{200}$ part of an acre, occupied by appellant's poles, must be maintained in order to accomplish the purposes of the corporation. An additional area must be obtained sufficient to admit of appellant's entry thereon for the purposes of constructing and maintaining the line, and this area should be expressly defined so as to admit of no dispute or controversy between the owners and the company. Even if it be said that the right to condemn the land necessary in setting its poles and guy wires carries with it an implied right to enter upon the premises for the purposes of construction and maintenance, the boundaries and extent of the implied right should be fixed and made certain, otherwise the question is left open for controversy by the company and the owners of the land as to the precise distance from either one or both sides of the erected poles that is necessary for use in the construction and maintenance of the line.

In the case of Adams v. San Angelo Waterworks Co., 25 S. W. 165, in an opinion by Justice Key of the Austin Court of Civil Appeals, it is said that:

"It is necessary that condemnation proceedings shall describe the premises condemned with as much certainty as is required in deeds and other conveyances. Mills, Em. Dom. § 115; Parker v. Railway Co., 84 Tex. 333, 19 S. W. 518."

In the case of Parker v. Railway Co., 84 Tex. 333, 19 S. W. 518, in an opinion by Chief Justice Stayton, it is said that:

"The statute requires the applicant for condemnation of land 'to state in writing the real estate and property sought to be condemned,' and if this be not so done as to identify the land to be taken the jurisdiction of the tribunal having power to condemn never attaches, it matters not what notices of proceeding may be given."

We further quote, from the opinion just referred to, the following:

"In the case of Railway v. Manufacturing Co., 1 White & W. Civ. Cas. Ct. App. § 396, the Court of Appeals of this state properly held, that in such cases the 'designation must be sufficiently certain to identify the particular portion of the land over which the right of way is sought. Without this the owner of the land can not know what portion of his land is required, nor the commissioners what damages to appraise, nor the petitioner the precise land acquired; nor can the decree of the court vest the easement in any particular land. It is the right of the owner of the land to know exactly the precise land taken, and it is the right of the party acquiring to know that which he has acquired. [N. Y. Cent. & H. R. R. Co., In re,] Railway v. Rau, 70 N. Y. 191; Railway v. Sanford, 23 Mich. 418. It is said the certainty required in such description is of the same nature as

that required in conveyances of land, so that a surveyor could go upon the land and mark out the land designated. The taking of the land is in the nature of a conveyance from the owner, and he is entitled to know how much land is taken from him and the exact boundaries of what remains. Mills on Em. Dom. sec. 115; Railway v. Railway, 118 Mass. 391.' This we understand to be the true rule. Railway v. Munson, 57 Mich. 42 [23 N. W. 455]; Railway v. Newsom, 54 Ind. 121; Railway v. Porter, 29 Pa. [165]; In re Application of Railway Company, 90 N. Y. 342; Lewiston v. Commissioners, 30 Me. 24; Mills on Em. Dom. 115; Lewis on Em. Dom., 350–352."

The judgment of condemnation in this case substantially follows the description given in appellant's petition, from which we have already quoted, but even if more definite it would be unavailing in view of the rule that the judgment must be supported by the pleadings, and we conclude from what has been said that appellant's petition is fatally defective in its insufficiency to describe the land sought to be condemned, for which reason the judgment below in all things must be reversed, and the cause remanded for further proceedings not inconsistent with law.

### On Motion for Rehearing.

Counsel for appellees insistently and plausibly urge that we erred in holding the petition of appellant company insufficient as a basis for a judgment condemning a 100-foot strip of land across appellees' premises. It is urged that, while appellant's petition may be insufficient as held, yet its deficiency in description is cured by allegations in the answer of appellees on original hearing. We originally examined the answer for the purpose of so determining, and have again examined the answer for the same purpose, but, as originally concluded, we yet think that the pleadings as a whole fail to identify and describe a strip of 100 feet with the required certainty. It is true that in the answer there are references from which it appears that appellees construed appellant's petition as an effort to condemn a strip of land 100 feet wide, but there is no specific allegation that we find to that effect. And appellant's reply to that answer, as pointed out by us in our original opinion, was a denial that appellant sought any such specific condemnation.

Moreover, if it be said that the proper construction of the pleadings as a whole was sufficient to authorize a judgment condemning a strip 100 feet wide, no such judgment was rendered. The judgment, as stated in our original opinion, follows the description of the land condemned as given in appellant's petition, to which is added the following words, to wit:

"Together with right to remove from said land all trees and parts thereof for a distance of 50 feet on each side of a located center line of the above described transmission line."

The grant of a right to remove existing trees from the land for a distance of 50 feet on each side of the line described in appellant's petition fails to constitute any specific grant to thereafter continuously enter and use the strip for other and further purposes necessary to the maintenance of the power line. It should perhaps be further noted that an examination of the findings and award of the commissioners originally appointed to assess the damages only gives the initial and terminal points of the line, without further description.

It is further insisted that our conclusion in the present case is in conflict with the case of Texas Electric Service Co. v. Wells (Tex. Civ. App.) 8 S.W.(2d) 705. It is urged that the petition in the Wells Case was identical with the one in the present case. We have examined the opinion referred to, but fail to find that the sufficiency of the pleadings or the sufficiency of the judgment was called in question.

On the whole, we think the pleadings and judgment was not sufficiently specific in its identification of the land sought to be condemned, and the motion for rehearing will be overruled.