## COLEMAN v. ARCHER COUNTY.
### (No. 12189.)

Court of Civil Appeals of Texas. Fort Worth. March 23, 1929.

W. E. Forgy, of Archer City, and Kay, Akin & Smedley, of Wichita Falls, for appellant.

Jno. R. Moore, of Archer City, and Carrigan, Britain, Morgan & King, of Wichita Falls, for appellee.

DUNKLIN, J. W. M. Coleman has appealed from an order of the judge of the district court of Archer county, denying him a writ of permanent injunction restraining Archer county and H. V. Pearston, county judge of that county, and all other officers, agents, and employees and attorneys of Archer county, from opening a public road of the first class through and across a tract of 12,000 acres of land owned by plaintiff in Archer county and running from Windthorst, in Archer county, north to the town of Scotland in the same county, and thence north to the Lake Creek community to connect with a road from Wichita Falls and Wichita county.

The petition for injunctive relief was duly filed by Coleman in the district court of Archer county on January 8, 1928, and Archer county and said county judge were made defendants, and those defendants filed an an-

swer to the petition. There was a hearing of the cause upon the pleadings of the parties, at which hearing evidence was introduced by both parties.

The evidence shows that the commissioners' court of the county is preparing to open the road in controversy, basing the right of the county so to do upon certain proceedings which will hereinafter be noted.

According to allegations in plaintiff's petition, the proceedings of the county to open the road were taken under and by virtue of the provisions of title 52 of the Statutes of 1925, on the subject of Eminent Domain, and particularly article 3264 of that title; and that the proceedings so taken were void for failure to comply with the requirements of that article. We quote only the following provisions of that article which are pertinent to this controversy:

"The exercise of the right of eminent domain shall in all cases be governed by the following rules:

"1. When real estate is desired for public use by the state or by a county, or a political subdivision of a county, or by a city or town, or by the United States Government, or by a corporation having the right of eminent domain, the party desiring to condemn the property after having failed to agree with the owner of the land on the amount of damages shall file a statement in writing with the county judge of the county in which the land or a part thereof is situated. It shall describe the land sought to be condemned, state the purpose for which it is intended to be used, the name of the owner if known, and that the plaintiff and the owner have been unable to agree upon the value of the land or the damages. Where the land lies in two or more counties, in one of which the owner resides, the statement shall be filed in the county of the owner's residence.

"2. When such statement is filed with the county judge, he shall, either in term time or vacation, appoint three disinterested freeholders of said county as special commissioners to assess said damages, giving preference to those that may be agreed upon between the parties.

"3. The commissioners shall be sworn to assess said damages fairly and impartially and in accordance with law.

"4. The commissioners shall promptly set a time and place for hearing the parties, and the day appointed shall be the earliest practicable day, and the place selected shall be as near as practicable to the property in controversy or at the county seat of the county in which the property is situated.

"5. Notice in writing shall be issued by the commissioners to each of the parties interested, notifying them of the time and place selected for the hearing.

"6. The notices shall be served upon the parties at least five days before the day set for the hearing, exclusive of the day of the

service, and may be served by any person competent to testify, by delivering a copy of such notice to the party, his agent or attorney. * * *

"9. The person serving notice shall return the original to the commissioners on or before the day set for the hearing, with his return in writing thereon, stating how and when it was served.

"10. When service of notice has been perfected, the commissioners shall at the time and place appointed or at any other time and place to which the hearing may be adjourned, proceed to hear the parties.

"11. Commissioners shall have the power to compel the attendance of witnesses and production of testimony, administer oaths, and punish for contempt as fully and in the same manner as is provided by law for judges of the county courts."

It was alleged in plaintiff's petition that the county had not filed with the judge of Archer county a statement in writing showing its desire to condemn the land necessary for the establishment of the road in question, describing the land sought to be condemned, the purpose for which it was intended to be used, the names of the owners, and that the county and such owners had been unable to agree upon the value of the land to be condemned or the damages thereto. It was also alleged that the county had made no attempt to agree with the plaintiff with respect to the amount of damages to his land by running the road through it prior to the proceedings taken to condemn it.

The record conclusively shows that no such application as provided by article 3264 was ever filed with the judge of Archer county. The first order made looking to the laying out and establishing the road in question appears in the minutes of the commissioners' court, dated December 10, 1928, and reads as follows:

"Orders Appointing Juries View.

"At this term of the Commissioners' Court the County Judge appointed the following named persons, freeholders of Archer County, as special commissioners to assess damages incidental to securing right of way for the opening of the following roads in Archer County, to wit: The Scotland Lateral road from Windthorst through Scotland and Lake Creek Community to Wichita County Line: Clay E. Ross, A. L. Harris, W. C. Jones.

"For the Megargel Lateral Road from Megargel in a northerly direction to a point 12 miles west of Archer City: J. F. Muerer, Geo. Parrish, and Geo. Gant."

The only other proceedings appearing in the record are as follows:

"Order Adopting Resolution on Lateral Road in Archer County.

"Among other matters that came on to be considered in this meeting was the location and construction of the lateral road from

Windthorst through Scotland and Lake Creek Communities to Wichita County line. After duly and freely discussing the matter and with the desire that the road above referred to will be designated and maintained as a State Road by the State Highway Commission, the following resolution was unanimously adopted:

"The Commissioners' Court of Archer County will secure an eighty foot right of way, and more where required, and will construct grade and concrete drainage structures that will conform to the Texas Highway standard on the lateral road from Windthorst to and through Scotland and Lake Creek Communities to the Wichita County line, on a location to be selected by Mr. Guy R. Johnson, Resident engineer of Archer County, and approved by Mr. Gib Gilchrist, State Highway Engineer.

"We agree to let contract for construction of the lateral road as soon as plans have been completed and approved by the State Highway Engineer.

"This resolution is passed with the understanding that contract on the lateral from Windthorst through Scotland and Lake Creek Communities to Wichita County line will not be let until after construction is begun on the Highway 25, from the Jack County line to Archer City."

It will be observed that the foregoing order bears no date.

A letter from appellant Coleman to the commissioners' court reads as follows:

"Archer City, Texas, November 12, 1928.

"To the Honorable Commissioners' Court, Archer City, Texas.

"Gentlemen: Now comes W. M. Coleman and with respect makes the following proposition to the court as the proposed public road running north out of the town of Scotland:

"That he will give to Archer County the right for a state and national highway, beginning at or near the northwest corner of Scotland townsite in Archer County, Texas. Thence north following the east line of Blocks No. 48, 47, 46, 45, 44, 43, 42, 41, 40, 25, 16, 6 and 5 to the north line of W. M. Coleman pasture about five miles in length, under the following conditions.

"First. I retain all mineral rights on and under the roadway. I will not deed the roadway to the County & State but give them the privilege to use the same for a roadway, a strip of land 80 feet wide. The county and state agreeing to make it a state maintained highway, giving me an underpass every mile through my pasture, at least 5 feet wide and five feet high. I retain the right to fence the underpass ways so my stock can pass under the road bed. The passways can be put in where the road bed crosses creeks and draws. The county and state allowing me Two Hundred Twenty Dollars per mile for each and

every mile of fence to be built across my pasture, fencing both sides of the road. I to furnish all material to build said fence with.

"This roadway is given with the understanding it shall be made a paved highway with concrete bridges and culverts and maintenance as a state highway, to be so established on or before three years from the date of location of same, in case the road is not made a state paved highway and maintained as such by the State of Texas within three years from the date of location of same, then all rights of way shall revert back to W. M. Coleman, his successors and assigns, and all fencing and other improvements that have been put on the road shall revert to the forfeited to W. M. Coleman, and the road shall be abandoned and closed by the county without any action at law or the necessity of the same.

"[Signed]   W. M. Coleman."

Another letter from Coleman reads as follows:

"Scotland, Texas, December 28, 1928.

"To the Jury of View:

"I have been informed that you will meet today for the purpose of laying and establishing a county public road across my pasture north and south, which pasture lies in Archer County, Texas, north of the town of Scotland, Texas; and I hereby make and file with you my claim for injury and damages caused and to be caused by the proposed road as adopted and established by yourselves:

| | |
|---|---:|
| General damages to all the land in the pasture, caused by cutting the pasture and farm in two | $ 75,000 00 |
| Damages to 1,500 acres of land caused by a grade across Wichita bottom, which will cause same to overflow | 25,000 00 |
| Eleven miles of fence at $220.00 per mile.. | 2,420 00 |
| 50 acres of land taken by right of way, at $30.00 per acre | 1,500 00 |
| Total | $103,920 00 |

"I will also require a viaduct or underpass every mile, three of these to be ten feet high and ten feet wide with a concrete floor, and the others to be five feet high and five feet wide, with concrete bottoms.

"I will also require a cattle guard put in where the road enters and leaves my land, I to retain all minerals under the right of way. I will require ten gates put in where designated by me, and the road fenced.

"You gentlemen are further advised that in making up your assessment of damages that the law does not provide that you deduct benefits, that is such benefits as are common to all land owners where the road passes, and if you deduct any benefits they must be of some special nature peculiar to me, and if you assess any benefits against me you are respectfully requested to state the nature of such benefits and whether they are, in the

opinion of the jury of views, peculiar to me and different from such ordinary benefits as are caused by building a road through a community.

"You are furthermore requested to act upon all of the items herein set forth and include your action in your written report to the Commissioners' Court.

"Yours Respectfully, W. M. Coleman."

A report of the commissioners appointed by the county judge of their assessment of damages reads as follows:

"Archer County vs. A. Berend et al. Condemnation Proceedings before H. B. Pearston, County Judge of Archer County, Texas.

"On this the 28th day of December, A. D. 1928, came on for hearing before the undersigned, A. L. Harris, W. C. Jones, and C. H. E. Ross, Special Commissioners, and disinterested freeholders of Archer County, Texas, appointed by the County Judge of Archer County, Texas, to condemn a certain right of way from Windthorst, Texas, in a northwesterly direction through Scotland and Lake Creek Community, to the Archer-Wichita County Line, and described as follows:

"A strip of land 80 feet wide, being forty feet on each side of the following described line, and additional width where necessary for materials as shown on plans on file in the county Clerk's office and in the County Engineer's office of Archer County. Being a point on the north city limits of Scotland township and the south line of W. M. Coleman land, L. Pennington survey Block 53, being 1,000 feet east of the southwest corner of said block 53; thence on same course to station 429.81, beginning of curve; thence on a 3 degree curve to left to station 434.36.6 end of curve; thence N 13° 57' W to station 572.22, beginning of curve; thence following a 2 degree curve to left to station 652.94.1 end of said curve; thence N 15° 49' W to station 659—58 north line of W. M. Coleman land, block 5, Coleman subdivision Brazos County School Lands, point being 417 feet east of the northwest corner of said block 5.

"Said parties having been duly notified of the time and place of meeting as is required by law and both parties appearing in person and by their attorneys, and after hearing said parties at the appointed time and place, and all the evidence as to the damages which will be sustained by said landowners by reason of such condemnation, we assess said damages as follows:

| Name of Owner. | Acres Cultivated. | Acres Pasture. | Total Amount Allowed. |
|---|---|---|---|
| W. M. Coleman, extra width & Chan. | 5.25 | 65.37 | $1,844.25" |

A letter from appellant, Coleman, to the county treasurer reads as follows:

"January 8, 1928.

"Mrs. Maude Ikard, County Treasurer, Archer City, Texas, Dear Madam: Your check dated January 4, 1929, as No. 17, payable to W. M. Coleman, for $1,844.25, account of right of way, is herewith respectfully returned to you.

"Mr. Coleman desires us to say to you that he declines to accept this check.

"Very truly yours, W. M. Coleman."

The order of the county judge reads as follows:

"Archer County vs. A. Berend et al. No.

"Condemnation Proceedings for the Highway from Windthorst to the Wichita Co. Line and Known as the 'Scotland Lateral' in Archer County, Texas.

"On this the 11th day of January, A. D. 1929, came on for final hearing the above numbered and entitled cause, and it appearing to the court that no objections, except as hereinafter shown, have been filed to the award of said Commissioners filed herein on the first day of January, A. D. 1929, which is as follows: (As fully shown in plaintiff's exhibit No. 7, on pages 16 and 17, above.)

"Objection and notice of appeal from this award of said commissioners was filed by the following named persons

A. Wolf..........Attorney, W. E. Forgey
E. H. Otte.......      "    "  "   "
Joe Scotts.......      "    "  "   "
H. H. Vieth.....      "    "  "   "
W. M. Coleman..      "    Kay, Aiken & Smedley
H. A. Meurer....      "    "    "   "

"It is therefore ordered, adjudged and decreed by the court that Archer County pay to each of the foregoing named defendants the amount set opposite their names and that such payment be and the same is hereby adjudged to be in full compensation for the property condemned and taken for road purposes set out in said report of the special commissioners for all of which let execution and writs of possession issue. H. V. Pearston, Co. Judge, Archer County, Texas."

The foregoing constitutes the entire proceedings apparent upon the records relating to such condemnation.

It is well settled by the decisions in this state that the only authority for condemnation of private property for public use is derived from the statutes enacted within the powers granted to the Legislature by the Constitution; and that, in the absence of a compliance with those statutory requirements the county court does not acquire jurisdiction to grant the condemnation where the proceeding is instituted under the provisions of article 3264 of the chapter upon eminent domain.

In the case of Parker v. Fort Worth & Denver City Ry. Co., 84 Tex. 333, 19 S. W. 518, this was said: "The statute requires the applicant for condemnation of land 'to state in writing the real estate and property sought

to be condemned,' and if this be not so done as to identify the land to be taken the jurisdiction of the tribunal having power to condemn never attaches, it matters not what notices of proceeding may be given."

To a like effect is a decision of this court in the case of Texas Electric Service Co. v. Perkins (Tex. Civ. App.) 11 S.W.(2d) 543, and many decisions therein cited, and also the decision in Galveston H. & S. A. R. Co. v. Mud Creek, etc., Co., 1 White & W. Civ. Cas. Ct. App. § 393, page 169.

In Johnston v. Galveston County (Tex. Civ. App.) 85 S. W. 511, Clements v. Fort Worth & D. S. P. Ry. Co. (Tex. Civ. App.) 7 S.W.(2d) 897, City of Dallas v. Atkins (Tex. Civ. App.) 197 S. W. 603, and Morgan v. Oliver, 98 Tex. 221, 82 S. W. 1028, 4 Ann. Cas. 900, it was held, in effect, that a decree of condemnation under the eminent domain statutes is void and of no effect, in the absence of an allegation and proof that, prior to the filing of the application for condemnation, the applicant had made an unsuccessful bona fide attempt to procure an agreement from the landowner as to the amount of damages which would be sustained by him as a result of the condemnation. To the same effect, see, also, Lewis on Eminent Domain (3d Ed.) par. 497.

In Haverbekken v. Hale, 109 Tex. 106, 204 S. W. 1162, it was held, quoting from the syllabus, that: "The power of the Commissioners' Court, under article 6860, Rev. Stats., to lay out and open public roads is thereby to be exercised 'as hereafter prescribed,' that is, under the limitations as to procedure imposed by the succeeding articles of the chapter; these requirements are jurisdictional and their observance essential to a valid exercise of the power of the court."

That proceeding was by the commissioners' court under the provision of article 6860, now article 6703, on the subject of "Establishment of County Roads by the Commissioners' Court."

Appellee contends that the proceedings for condemnation taken by it for the purpose of establishing the road in controversy were under and by virtue of the terms of article 3264a, Rev. Statutes of 1925, which article was enacted in that year, and that those proceedings were not under and by virtue of the provisions of article 3264. Article 3264a reads as follows:

"The right of Eminent Domain is hereby conferred upon counties of the State of Texas for the purpose of condemning and acquiring land, right of way or easement in land, private or public, except property used for cemetery purposes, where said land, right of way or easement is necessary in the construction of jails, courthouses, hospitals, delinquent and dependent schools, poor farms, libraries or for other public purposes, where such purpose is now or may hereafter be authorized by the Constitution or Statutes of this State.

"All such condemnation proceedings shall be instituted under the direction of the commissioners' court, and in the name of the county, and the assessing of damages shall be in conformity to the Statutes of the State of Texas for condemning and acquiring right of way by railroads. That no appeal from the finding and assessment of damages by the commissioners appointed for that purpose shall have the effect of causing the suspension of work by the county in connection with which the land, right of way, easement, etc., is sought to be required. In case of appeal, counties shall not be required to give bond, nor shall they be required to give bond for costs."

Appellee contends that under and by virtue of the terms of that article it was not necessary to comply with the requirements of article 3264, especially in view of the provisions of article 6703 of the Statutes, which provides in part as follows:

"The Commissioners' Court shall order the laying out and opening of public roads when necessary, and discontinue or alter any road whenever it shall be deemed expedient."

The article last mentioned is embodied in chapter 2, title 116, of the Rev. Statutes 1925. All of those articles relate to the establishment of county roads. By that statute the jurisdiction is vested in the commissioners' court to lay out and establish public roads, and thus, in effect, to condemn land for that purpose. Those articles of the statutes do not give the commissioners' court jurisdiction to exercise the right of eminent domain for any other use than for public roads. It is clear that the proceedings now in controversy in this suit were not begun under any of the provisions of the statutes last referred to. In the first place, the proceedings now in controversy do not purport to have been instituted by the commissioners' court, but were initiated by the county judge solely by the appointment of three commissioners. In the second place, there was no order of the commissioners' court establishing the road; nor did the commissioners' court appoint a jury of view, consisting of five persons, to lay out, survey, and describe the road to be established, as required by article 6706.

Since there was no showing for condemnation under the articles of the statutes relating to the establishment of county roads, then it follows that the only methods provided by the statutes for the establishment of the road in controversy were embraced in title 52 of the Statutes 1925, beginning with article 3264. Article 3264, in general terms, gives the right of condemnation of land for public use by a county and others. Article 3264a gives substantially the same right as given in article 3264, and specifies therein the right of condemnation of land for "right of way or easement in land," with certain exceptions. That article also provides that the damages in condemnation proceedings for the

purposes therein instituted "shall be in conformity to the statutes of the State of Texas for condemning and acquiring right of way by railroads." Article 3265 of title 52 prescribes a rule for the assessment of damages for condemnation of land under the provisions of title 52. That article was in the statutes prior to the enactment of article 3264a, and by the terms of the latter article the rule for assessing damages was as stated in the provisions quoted above, and that rule would apply, of course, if that measure of damages be different from the rule prescribed in article 3265. Article 3264a does not attempt to prescribe the rule of procedure for condemnation, and it is clear that the procedure prescribed in 3264 and the requirements herein stated for the purpose of vesting jurisdiction in the county court must control, even if the right of eminent domain is claimed by the county under article 3264a exclusively. In article 3246a this language is used: "All such condemnation proceedings shall be instituted under the direction of the commissioners' court, and in the name of the county."

That language clearly implies that a judicial proceeding must be instituted, and it specifically authorizes the commissioners' court to institute the same in the name of the county. Furthermore, the order of the county judge appointing three commissioners to assess the damages indicates that he was attempting to follow the requirements of article 3264.

■■ It is our conclusion that all of the proceedings taken before the county judge, as indicated by the orders made by him and copied above, were absolutely void for lack of jurisdiction, in that the requirements of article 3264 necessary to confer jurisdiction to condemn appellant's land for the purpose of the public road in question were not complied with.

Furthermore, the application for condemnation under the eminent domain statutes constitutes the pleading upon which the judgment of condemnation sought must be based, and, since no such application of any character was filed with the county judge, any decree of condemnation would be void for lack of a pleading as a basis therefor, at least as against the direct attack made thereon by appellant in this case. Moreover, the record does not show that in fact any decree of condemnation was ever entered, either by the county court or by the county judge; the final decree being confined to an approval of the report of the commissioners in the matter of assessing damages to the owners of land through which the road was to be established.

■ And, since neither the county court nor the county judge acquired jurisdiction over the subject-matter in controversy, appellant did not waive his right to the injunctive relief sought by him in the present suit by appearing before the three commissioners and putting in his claim for damages to his land resulting from establishing the road through it. Travis County v. Trogdon (Tex. Civ. App.) 29 S. W. 46; City of Dallas v. Bergfield (Tex. Civ. App.) 245 S. W. 749; Haverbekken v. Hale, 109 Tex. 106, 204 S. W. 1162.

For the reasons indicated, the judgment of the trial court denying appellant the injunctive relief prayed for is reversed, and judgment is here rendered in favor of appellant, to the effect that appellee, Archer county, the county judge thereof, and all others of its officers and agents, are hereby restrained from the establishment of the road in controversy across appellant's land and from doing and performing any act incident to, or for the purpose of, establishing said road across appellant's land under and by virtue of the proceedings already had and referred to above. This conclusion shall be without prejudice to the right of appellee to institute other proceedings for laying out and establishing the road in accordance with the statutes in such cases made and provided.