**HOUSTON LIGHTING & POWER CO. v. DAILY et al. (No. 8901.)***

(Court of Civil Appeals of Texas. Galveston. Jan. 12, 1927. Rehearing Denied Feb. 17, 1927.)

1. **Eminent domain** ⬅219—**Admission of plaintiff's power of eminent domain and legal taking of possession entitled owner of land condemned to open and close as plaintiff.**

In proceeding to condemn land for electric transmission lines, admission by owner of land that power company had power of eminent domain and that it had taken possession in manner provided by law and was entitled to judgment of condemnation excludes any question of regularity of condemnation proceedings prior to admission, and was sufficient to entitle owner to conduct trial as plaintiff and to open and close case.

2. **Appeal and error** ⬅1064(1)—**Charge that owner was entitled to fair value of land condemned for electric lines, though unnecessary in case submitted on special issues, was not prejudicial.**

In proceeding to condemn land for electric transmission lines submitted on special issues, charge that power company was entitled to condemn and that owner of land was entitled to receive reasonably fair value of land taken, though unnecessary, did not prejudicially affect jury in determining value of land taken.

3. **Eminent domain** ⬅222(4)—**Charge as to determination of market value of land condemned for electric lines held correct.**

In proceeding to condemn land for electric transmission lines, charge that market value of land taken is price which it will bring when offered for sale by one desiring, but not compelled, to sell, and bought by one under no necessity of having it, and that uses to which land may be applied together with owner's desire to use it are to be considered, held correct.

4. **Eminent domain** ⬅262(5)—**Charge that Constitution prohibits taking private property for public purposes without adequate compensation, though unnecessary, was not prejudicial in condemnation proceeding.**

In proceeding to condemn land for electric transmission lines, court was not required to instruct that Constitution forbids taking of private property for public purposes without adequate compensation unless owner consented, but giving of charge was not prejudicial error on question of amount of damage.

5. **Appeal and error** ⬅1170(9)—**Irrelevant and immaterial statement in charge does not make statement harmful and require reversal of judgment (Court of Civil Appeals rule 62a).**

Under rule 62a, prescribed by Supreme Court for Court of Civil Appeals, mere fact that statement in charge is irrelevant and immaterial does not make statement harmful and require reversal of judgment.

6. **Trial** ⬅215—**Special charge calling for general verdict or instruction on law arising on facts should not be given when case is submitted on special issues.**

When case is submitted on special issues, it is improper to submit special charge calling for general verdict, or to instruct jury as to law arising on facts of case.

7. **Eminent domain** ⬅222(1)—**Instruction to estimate injuries and benefits to remainder of land when portion is condemned and to exclude those received with community generally held proper.**

In proceeding to condemn land for electric transmission lines, instruction that when portion of land is condemned, jury must estimate injuries and benefits to remainder of land, and to exclude such injuries or benefits as are sustained or received in common with community generally, *held* proper.

8. **Eminent domain** ⬅222(5)—**Charge confining damages to smaller of tracts condemned for electric lines held not erroneous as including damage to both tracts.**

In proceeding to condemn land for electric transmission lines extending diagonally across two tracts of defendant's land, charge expressly instructing jury that there was no evidence of damages to smaller tract and to consider damage only to larger tract was not erroneous as including damage to both tracts.

9. **Eminent domain** ⬅262(2)—**Company condemning lands cannot complain that no part of damages was allowed tenant and mortgagee appearing in suit and not complaining of judgment.**

In proceeding to condemn land for electric transmission lines, power company cannot complain that no part of damage was awarded to owner's tenant and mortgagee, who appeared and answered suit but made no complaint to judgment.

10. **Evidence** ⬅543(3)—**Witnesses held qualified to express opinion as to value of land condemned for electric lines and damage caused.**

In proceeding to condemn land for electric transmission lines, witnesses who were shown to have knowledge of character of land, its use and price at which similar land in same community was bought and sold, and who viewed equipment used and right of way condemned, *held* qualified to give opinion as to value of land taken and damage caused by construction of lines, objection to testimony going to its weight and not admissibility.

11. **Eminent domain** ⬅150—**Award of $1,619.05 for 22-foot strip taken for electric lines and for damage to land not taken held not excessive.**

In proceeding to condemn right of way for electric lines 22 feet wide diagonally across two tracts of land consisting of 270 and 102.78 acres, award of $265.30 for value of land taken and $1,343.75 as damage to remainder of land was not so excessive as to authorize court to disturb verdict.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction April 13, 1927.

**12. Evidence ⟨⟩543½—Testimony as to damage to land caused by construction of electric lines thereover held not limited to electrical experts.**

In proceeding to condemn land for electric transmission lines, testimony as to damages caused by construction of line is not limited to testimony of electrical experts.

Appeal from Ft. Bend County Court; W J. McFarlane, Judge.

Condemnation proceedings by the Houston Lighting & Power Company against Sam Daily and others. Judgment awarding damages, and plaintiff appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Peareson & Peareson, and D. R. Peareson, all of Richmond, for appellant. J. V. Meek, of Houston, for appellees.

PLEASANTS, C. J. This appeal is from a judgment of the court below for damages, rendered in a condemnation proceeding brought by appellant against the appellees.

Under statutory proceedings, of which no complaint is made, appellant was awarded a right of way for its electric transmission and distributing lines across lands belonging to the appellees, Joe, Sam, and Abe Daily. The Fidelity Savings Trust Company, which held a mortgage on the land, and two tenants of the Dailys who had growing crops on portions of the land, were also parties defendant.

Appellant, being dissatisfied with the amount awarded the appellees by the commissioners of appraisement appointed by the county judge, brought the case before the county court for trial upon the question of damages. Before the trial in the court below the appellees filed a written admission of appellant's right to condemn the land, and assumed the burden of proving the value of the land taken, and the amount of the damages claimed by them, and asked the right to conduct the trial as plaintiff and to open and close the case. This request was granted.

The trial with a jury resulted in a verdict fixing the value of the land taken for the right of way at $265.30, and the damages to the remainder of appellees' land at $1,343.75. Upon the return of the verdict judgment was rendered in favor of appellant condemning the land sought by it for right of way purposes and awarding the appellees Daily the sum of $1,619.05.

The land taken by appellant for its right of way is a strip 22 feet wide and extends diagonally across two tracts of land belonging to appellees Daily near the town of Rosenberg. Each of these tracts is in shape of a parallelogram and is now being used by the owners for farming purposes. The tract nearest to the town of Rosenberg contains 270 acres and the other tract 102.78 acres. The judgment condemns the land to the use of appellant "for the purpose of constructing thereon, maintaining and using the same, a high power electrical transmission and distributing line, consisting of variable numbers of wires and all appurtenances, including towers and poles made of wood, metal, and other materials, also props and guys, and also telephone and telegraph wires, and the said right of way or easement over said above described land is hereby given and granted to plaintiffs and divested out of defendants."

No evidence of damage to the smaller tract before mentioned was adduced by plaintiffs, and the trial court instructed the jury that plaintiffs could only recover the fair market value of the land taken from that tract for the right of way. The evidence is sharply conflicting upon the issues of the value of the land taken from the two tracts, and the amount of the depreciation in value of the remainder of the 270-acre tract caused by the taking by plaintiffs of the right of way thereover, but there is sufficient evidence to sustain the findings of the jury upon both of these issues.

In submitting the issue of the value of the land condemned, the court gave the jury the following instructions:

"You are instructed that the Houston Lighting & Power Company, under the laws of the state, has the right to condemn the lands described in its petition which it seeks to condemn, and the defendants have admitted its right to condemn same; but under the laws of the state, the defendants are entitled to receive from the plaintiff the reasonably fair market value of the land actually taken by the plaintiff, which is described by metes and bounds in its petition.

"You are instructed that the market value of property is the price which it will bring when it is offered for sale by one who desires, but is not obliged to sell it, and is bought by one who is under no necessity of having it; but in arriving at what would be the fair market value of the property taken by plaintiff and sought to be condemned, all of the uses to which it may be applied and defendants' desire to use it, are to be considered by you."

The court further instructed the jury as follows, in submitting the issue of damages to the 270-acre tract:

"You are instructed that the Constitution of this state provides, 'That no person's property shall be damaged or destroyed or applied to public use without adequate compensation being made, unless by consent of such person.'

"When only a portion of a person's real estate is condemned, it is the duty of the jury trying the case to estimate the injuries sustained and benefits received thereby, by the owner, as to the remaining portion of such real estate, if any, whether such remaining portion

---

is increased or diminished in value by such condemnation, and the extent of such increase or diminution, and assess the damages accordingly. .

"In estimating either the injuries or benefits, as mentioned in the preceding paragraph, those injuries or benefits which the owner of such real estate sought to be condemned sustains or receives in common with the community generally, and which are not peculiar to him and connected with his ownership, use, and enjoyment of the particular parcel of land, shall be altogether excluded from such estimate. By the word 'damaged' as used in this charge, is meant some injury peculiar to the particular property in question suffered by it as a result of the construction complained of, and not in general with other property in the same community; bearing in mind the foregoing instructions, and being governed by the evidence offered under the ruling of the court and using your own good common sense and judgment, you will answer the following questions."

The first question presented in appellant's brief is against the action of the trial court granting appellees' request to open and close the case as plaintiffs, on the ground that appellees' written admission of appellant's right to condemn the property was insufficient, in that it does not expressly admit that all of the statutory proceedings requisite to the condemnation of the property had been complied with by appellant. The admission is in the following language:

"Plaintiff herein has the right to exercise the power of eminent domain in condemning the property owned by these defendants and described in their application for condemnation and admit plaintiff's right to condemn the property sought to be condemned in this proceeding and that the plaintiffs have gone into possession in the manner provided by law."

[1] This admission is not subject to the objection made by appellant. It is not merely an admission that appellant has the power of eminent domain, but expressly admits that plaintiff had taken possession in the manner provided by law and was entitled to a judgment of condemnation in this suit. Such admission necessarily excludes any question of the regularity of the condemnation proceedings prior to the time the admission was presented, and was clearly sufficient to entitle appellees to conduct the trial as plaintiffs and open and close the case. .

Under several succeeding propositions appellant assails the charge of the court before set out submitting the issue of the value of the land taken by appellant on the grounds that, the cause having been submitted upon special issues, "there was no necessity for the court to explain to the jury the rights of the defendant, nor the effect of the finding of the jury on the special issues. The jury should not have been informed as to whom the finding would benefit," and the charge does not submit the proper definition of market value, "because the charge does not explain what is meant by necessity, because the charge does not instruct the jury that the market price means the fair price of the property appropriated which would obtain between a prudent person who wants to purchase and one who wants to sell, but neither of whom is under any necessity to purchase or sell under conditions existing at time of entry, and because the value is not limited to the time when possession of the property was taken."

[2, 3] While it was unnecessary for the court to inform the jury that the appellant was entitled to condemn appellees' land, but that under the law appellees were entitled to receive from appellant the reasonably fair value of the land taken by it, such statements in the charge could not possibly have influenced the jury in determining the issue of the value of the land taken. No juror possessing an intelligence above that of a half-wit, and we must assume that no member of this jury was so afflicted, could have failed to have known and understood from the pleadings in the case and the obvious nature and purpose of the proceedings that if appellant was given the land, the value of the land as found by the jury would go to the appellees, and therefore the charge gave the jury no information not already necessarily possessed by them as to who would receive the benefit of the value of the property. The rules for determining the value of the property are correctly stated in the charge, and appellant's objections to the charge in this respect cannot be sustained.

Appellant next assails the first paragraph of the charge before set out, submitting the issue of the amount of damage to the remainder of the 270-acre tract caused by the right of way thereon, on the following ground:

"If defendants' admission as to plaintiff's cause of action was effective there was no issue before the jury except as to the value of the land appropriated and the difference in value in any of the remaining land, and the court having held the admission made by defendants was sufficient, error was committed by the court in giving paragraph No. 4, to the effect 'that no person's property shall be damaged or destroyed or applied to public use without adequate compensation being made unless by consent of such person.'"

[4, 5] What we have said in answer to appellant's complaint of the first paragraph of the charge, submitting the issue of the value of the land taken, is applicable to this objection. The court was not required to inform the jury that the Constitution of this state forbids the taking of damage of private property for public purposes without adequate compensation to the owner, unless with the owner's consent. Such statement in the

charge was wholly unnecessary and furnished no aid to the jury in determining the issue of what amount of damage was caused appellees' land by giving appellant a right of way thereover. But the mere fact that a statement in a charge is irrelevant and immaterial does not make the statement harmful and require the reversal of the judgment. To so hold in regard to this charge would, in our opinion, be in utter disregard of rule 62a prescribed by the Supreme Court for Courts of Civil Appeals, and would abrogate and destroy the long-established and salutary doctrine of "harmless error." Neither of these unnecessary instructions is the kind of charge condemned in the cases of Connellee v. Nees (Tex. Com. App.) 266 S. W. 503; Anderson & Co. v. Reich (Tex. Com. App.) 260 S. W. 162; Railway Co. v. Harrington (Tex. Com. App.) 235 S. W. 188, and the cases cited in the opinion in the Harrington Case.

[6] It is well settled that when a case is submitted on special issues it is improper to submit a special charge calling for a general verdict (Moore v. Pierson, 100 Tex. 114, 94 S. W. 1132), or to instruct the jury as to "the law arising on the facts of the case." The ground upon which this rule is based seems to be that the jury in deciding special issues of fact submitted to them by the court might be influenced in deciding such issues by instructions of the court directing or informing them as to the effect of their finding upon the legal rights of the parties to the suit. As before said, it is inconceivable to us that the charge in this case could have influenced the jury in deciding the issues submitted to them.

[7] Other portions of the charge, before set out, are merely explanations and statements of the rules of law to be observed by the jury in determining the question of damage to appellees' land, and appellant's several objections to these portions of the charge are without merit.

[8] Appellant further objects to the charge on the grounds that the question on the issue of damages to the land of appellees not taken by appellant for its right of way is not confined to the 270-acre tract, but the language of the question is broad enough to include the 102.33-acre tract, as to which no evidence of damage was offered by appellees, and that the charge does not instruct the jury to apportion the damages found by them between the owners of the land and the other defendants, the tenants and lienholder.

Neither of these objections can be sustained. The charge expressly instructed the jury that there was no evidence of any damages to the smaller tract of land, and that they should only consider the question of damage to the 270-acre tract. With this instruction before them, the jury could not have understood the question as to the damage to appellees' land to include both tracts.

[9] The court also instructed the jury not to allow any damages to the defendant tenants, nor to the trust company, who held a mortgage on the land. These defendants were before the court and had answered in the suit, and make no complaint of the judgment against them. If the tenants and lienholder defendants are satisfied with judgment, appellant cannot complain that no part of the damages to the land found by the jury was awarded to those defendants.

The remaining 12 propositions presented in appellant's brief complain of the rulings of the court in admitting testimony of witnesses for appellees as to the value of the land taken by appellant and the amount of damage to the remainder of appellees' land caused by appellant's right of way, over appellant's objection that the witnesses were not shown to be qualified to give an opinion as to the value of the land taken or the damages to the remainder of the land. A discussion of a few of these propositions in detail is sufficient to illustrate our holding upon all of them. The following quotations from appellant's bills of exceptions show the testimony objected to by appellant and the nature of the objections:

The appellees' witness, F. A. Schawe, testified:

" 'I now reside at Rosenberg where I have resided for the past 18 years during which time I have been in the real estate business buying and selling generally over the country. I am familiar with the piece of land of Daily Bros., over which the plaintiff's line is being constructed. I use to know the land when Mr. Pleak owned it and before he sold it to Daily Bros. Well; I guess I am familiar with market values of land in that neighborhood. I have been buying and selling lands since 1912 and know what they were bought and sold for.'

"Thereupon, defendant's counsel asked the said witness the following question: 'Give us your opinion of what the reasonable market value of that land was at the time that they constructed their line across it?' Plaintiff objected to said question and to the answer thereto because the witness is not shown to be properly qualified to give an opinion as to what was the market value of the land in question. The court overruled the objection and permitted the witness to answer, to all of which the plaintiff excepted, and said witness thereupon answered: 'Well; $125 to $135 per acre.' The said witness had not been otherwise qualified to give testimony as to the value of said land."

This witness further testified:

" 'I have seen the line constructed by the plaintiff over the Daily tract nearest to Rosenberg.'

"Thereupon the witness examined the plot introduced in evidence and shown in the statement of facts, and thereon identified the Daily

land and the position of the right of way sought to be condemned in this proceeding. Whereupon defendants' counsel asked the witness the following question: 'Now, Mr. Schawe, if there is about 170 acres in that tract of land and this right of way, 22 feet wide, runs diagonally across it, in your judgment would such construction of the line and putting that permanent right of way through there with its poles and wires and such use as it will have a right to make of it lessen the value of the balance of the land?'

"To which question and answer thereto the plaintiff objected for the reason that it had not been shown that the witness is an expert in such sense that he is authorized to testify in such matters. Thereupon, the court overruled said objection and permitted the witness to testify, to all of which the plaintiff excepted. The said witness then testified in respect to said question as follows: 'Yes, sir.'

"Defendants' counsel then asked the said witness the following question: 'Now, then, in your judgment from your experience and knowing the land and character thereof and the use that it will be put to, what in your opinion would be lessened market value of the land that was not taken, if any?'

"To which question and answer the plaintiff objected because the witness had not shown himself qualified to speak about such matters as an expert, nor had it been shown that he is acquainted with the market value of lands of this kind. The court overruled said objection and permitted the said witness to testify, to all of which the plaintiff excepted and said witness did then and there testify as follows: 'It would be $15 to $20 per acre.'

"The above and foregoing is all the testimony given showing the qualifications of said witness to testify."

The witness Hillyer, for appellees, testified:

"'I have lived at Rosenberg for 30 years, and for the last 20 years my occupation has been largely real estate, and during this time I have bought and sold and been instrumental in making sales in and around Rosenberg, and from this experience I would think that I am qualified to given an opinion as to the reasonable market value of a piece of land within three or four miles of Rosenberg. I am familiar, I think, with the Daily tract of land over which the Houston Lighting & Power Company built its line, that is the piece nearest to Rosenberg that they are farming. I have been on the land and know the character of it and what it is adapted to.'

"Thereupon defendants asked the witness the following question: 'In your opinion what is the reasonable, fair market value of those lands during the month of July, about the time or just before the Houston Lighting & Power Company built its lines through; that is, as it was at that time, about July?'

"Thereupon plaintiff objected to said question and to the answer thereto for the reason that the witness had not been shown to be qualified to give his opinion about the land in question. But the court overruled said objection, and permitted the witness to answer as follows: '$100 to $125 per acre is about right.'

"The plaintiff excepted to the action of the court. The witness further testified, at the instance of the defendants: 'I am familiar with the character of the improvements on the land. I have been on it. I do not know that I have seen the maps, but I have seen the plaintiff's line on the ground—that is, passing along there I just noticed how it ran across it.'.

"Thereupon the defendant asked the said witness the following question: 'Now, in your judgment, what would you say in reference to the building of that line through there and taking that right of way in the shape that it has been built and constructed and taking the line as they have run it across the field as to whether or not the balance of the land sought to be condemned has been lessened in value or not?'

"To which question and answer the plaintiff objected because the witness had not been shown to be qualified to give such testimony, but the court permitted the witness to testify in respect to such question as follows: 'I think it has.'

"To all of which the plaintiff excepted.

"Thereupon the defendants asked the witness the following question: 'How much per acre do you think the balance of the tract not condemned has been lessened in the market?'

"To which question and answer thereto the plaintiff excepted for the same reason as stated above. But the court permitted the witness to testify to such question as follows: 'Well; it does not make it quite so desirable to sell. As to being injurious to the balance of the farm for cultivating, I do not know that it is, but of course it is across there. Well; I think it has lessened its value. To what amount I do not know that I would be able to say, but it has been damaged at least $2.50 per acre the whole tract; that is my judgment, but I do not include the strip they are condemning.'"

H. Blase, a witness for appellees, testified that he resided about 7 miles from Rosenburg and knew where appellees' land is across which appellant's power line was constructed, and had seen the line; that he had been in the farming business in that county since 1900 and was familiar with land values around Rosenburg and in his section, had heard of sales and purchases and offers, and thought he was prepared to give an opinion as to the value of land; that during the 25 years he had lived there he had known of sales in and around that vicinity, had heard what prices were asked for land, and heard offers made, and, putting all of these facts together, he felt qualified to express an opinion as to the reasonable fair market value of land in appellees' neighborhood; that he knew the character of appellees' land and the uses to which it could be put.

After making the foregoing statements as to his knowledge of the value of appellees' land and of the location of appellant's power line across the land, he testified, in response

to questions propounded by the attorney for appellees, that the reasonable market value of appellees' land just before appellant's line was constructed thereover was about $125 per acre, and the construction and maintenance of the line over the land lessened the market value of the tract 15 or 20 per cent.

Appellant objected to this testimony on the ground that the witness had not shown himself qualified to testify as to the value of the land or the amount of damage it suffered by the construction and maintenance of appellant's line. We do not think the trial court erred in overruling appellant's objection to any of this testimony.

[10] If knowledge of the character of the land involved, and the uses for which it is adapted, and the prices at which lands of the same character, in the same community, and adaptable to the same uses were bought and sold, when such transactions occurred, does not qualify a witness to give his opinion as to the value of the land, there is no way by which such value can be shown. Appellant's objection to the testimony of these witnesses goes to the weight and not to the admissibility of their testimony. This is also true of the testimony as to the damage to the land caused by the maintenance of appellant's line thereover. The witnesses had seen the line, the poles, props, and guys and other implements and structures used in its maintenance, knew the width of the right of way and its location across appellees' land, and were able to make a fair and reasonable estimate of the extent to which the maintenance of the line and control of the right of way across the land might interfere with its use for the purposes for which it was adaptable, and in view of these conditions give their opinion as to the amount of damage caused the land by the construction and maintenance of appellant's line and the control by appellant of the right of way.

[11, 12] We cannot agree with appellant that only an electrical expert is competent to testify as to the injury and damage caused appellees' land by the construction and maintenance of the electrical power line. Appellant offered the testimony of electrical experts, and the jury had the benefit of such testimony in fixing the amount of damage. The verdict is less than the amount fixed by several of appellees' witnesses, and we cannot hold from the entire evidence that the amount of damages found by the jury is so excessive as to authorize this court to disturb it.

After fully considering all of appellant's objections to the judgment, we have reached the conclusion that none of them should be sustained and that the judgment should be affirmed.

Affirmed.