# CITY OF TRINITY v. McPHAIL et ux.

## No. 10846.

Court of Civil Appeals of Texas. Galveston.

July 13, 1939.

Rehearing Denied Sept. 28, 1939.

Clegg & Clegg, of Trinity, and Dean & Humphrey, of Huntsville, for appellant.

Wiley B. Thomas, of Groveton, and Bryan, Suhr, Bering & Bell and George Eddy, all of Houston, for appellees.

MONTEITH, Chief Justice.

This is an appeal from a judgment of the county court of Trinity County in a condemnation suit brought by the City of Trinity, appellant, against H. L. McPhail and wife, appellees, seeking condemnation of two strips of appellees' land located in the town of Trinity, Texas, one strip on the north side of their premises, approximately 14x116 feet, or $\frac{1}{27}$ of an acre, and a strip on the west side of appellees' premises, approximately 15x193 feet, or $\frac{1}{15}$ of an acre, for right of way purposes, to be used in the construction of a State and Federal Highway known as Highway No. 19.

The petition of appellant contained all of the statutory averments. The County Judge acted upon such petition and appointed three commissioners who duly qualified, gave the statutory notices, held a hearing, and made their report, assessing damages in favor of appellees in the sum of $200, and taxing all costs against appellees.

The award of the commissioners was deposited with the clerk of the county court of Trinity County by appellant, City of Trinity, before taking possession of the property condemned, and before commencing the construction of said improvements.

Appellees duly filed their objections and exceptions to the award of the commissioners in the County Court of Trinity County. They thereafter amended their objections and exceptions to the award of the commissioners and trial was had, after answer filed by appellant, on appellees' second amended objections to the decision and award of the commissioners.

The case was tried before a jury, who, in answer to special issues submitted, found that the property had an intrinsic value,

that the value of the land taken was $750, and that the damage to the remainder of appellees' property was $1,200. Based on the answers to said special issues, the court rendered judgment for appellees in the sum of $1,950, and for appellant condemning the land for right of way purposes.

By agreement, appellees admitted that the property belonging to them sought to be condemned by appellant was subject to condemnation proceedings, and that appellant was entitled to have it condemned, and that it had condemned it and gone into possession thereof, in the manner provided by law, and that the only issue between the parties was the amount and value of the property taken, and the damage done to appellees' property adjoining that which had been condemned. On the strength of said admissions, appellees were given the right to open and conclude the trial.

Appellant assigns error in the action of the trial court in submitting special issue No. 1, which inquired whether or not the property in question had an intrinsic value at the time it was condemned, contending that the measure of damage in a condemnation suit is based upon the market value of the land taken and the difference, if any, in the market value of the remainder of the tract immediately before and immediately after the appropriation thereof, and that the court committed reversible error in submitting to the jury a special issue as to the intrinsic value of the property taken, in the absence of a finding that the property had no market value.

Appellant objected to special issue No. 1 in the court's charge which inquired of the jury as to whether said property had an intrinsic value, and to special issue No. 2 as to the intrinsic value of said property, and to special issue No. 3 as to whether appellees suffered any damage to the remainder of the property owned by them by reason of the taking of and possession thereof, and to special issue No. 4 as to the amount of damage sustained by appellees to the remainder of said property. Appellant also presented to the court its special issues Nos. 1, 2, 3, and 4, which requested the court to submit to the jury issues as to the market value of both of said strips of land, and as to whether the market value of appellees' tract of land, exclusive of the strips of land condemned, decreased immediately after the condemnation by reason of the taking of said strips of land, and as to how much, if any, the

market value of appellees' land had decreased after such condemnation by reason of the taking of said two strips of land.

The authorities are uniform in this state in holding that the measure of damages in a condemnation suit, where a part of a tract of land is taken for public use, is the market value of the land actually appropriated and the difference, if any, in the market value of the remainder of the tract immediately before and immediately thereafter, taking into consideration the nature of the improvements and the use to which the land is to be put.

This rule is stated by the Commission of Appeals in the recent case of State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 197, rehearing denied, 126 Tex. 604, 89 S. W.2d 979. In discussing the measure of damages in a condemnation suit, the court said: "We are of the opinion that the proper rule for ascertaining the measure of damage to the remainder of a tract of land where a part only has been taken for public use is directly analogous to the rule which is applicable when there has been a permanent injury to land by reason of the construction of a public improvement, or the construction of an improvement by a private agency exercising the right of eminent domain. By this rule the damages are to be determined by ascertaining the difference between the market value of the remainder of the tract immediately before the taking and the market value of the remainder of the tract immediately after the appropriation, taking into consideration the nature of the improvement, and the use to which the land taken is to be put."

In the case of City of Rosebud v. Vitek, Tex.Civ.App., 210 S.W. 728, 729, in a condemnation suit, in which the only issue involved was the value of the land taken and damage to the remainder, the court, in setting out the rule of damage in condemnation suits, says: "The true measure of damages in the instant case was the market value of the land taken and the difference, if any, in the market value of the remainder of the tract just before and just after the condemnation thereof."

In the case of Wilson v. Newton County, Tex.Civ.App., 269 S.W. 227, 229, the court in its opinion says: "If the land had been lawfully condemned, the measure of appellants' damages would have been the market cash value of the land actually

taken, with such additional damages as resulted to the remainder of the land from the construction and operation of the road, from which might be deducted the value of the benefits, if any, which accrued to the remainder of the land by reason of the location, construction, and operation of the road, the resulting injuries or benefits being peculiar to and affecting only the owner of such lands, and not such resulting injuries or benefits as are common to property generally in the community."

In the case of Wolsch v. State, Tex.Civ. App., 77 S.W.2d 1062, 1063, the following rule is stated: "The general rule for measuring the damages in a condemnation proceeding when a part of a tract is taken is to allow the reasonable market value of the land actually taken, plus the diminution in value of that remaining."

The above rule is followed in the cases of Eastern Texas R. Co. v. Eddings, 30 Tex.Civ.App. 170, 70 S.W. 98; Houston Belt & Terminal R. Co. v. Wilson, Tex. Civ.App., 165 S.W. 560; Owens v. Navarro County Levy Improvement District No. 8, 115 Tex. 26, 280 S.W. 532.

It is unquestionably the rule that where the evidence is uncontradicted, or where the jury finds that the property involved has no market value, that then the intrinsic value of the property becomes the measure in determining damages in condemnation suits. However, where the measure of damages in an action is based upon market value, as in a condemnation suit, and there is evidence that the property in question has a market value, it is error for the trial court to submit to the jury an issue on the measure of damages based upon the intrinsic value of the property, without a prior determination by the jury that the property has no market value.

Appellees contend that it was not error for the trial court to refuse to submit to the jury an issue as to the market value of the property in question at the time of said condemnation, for the reason that there was no competent evidence in the record that there was a market value in Trinity for such property at that time.

J. W. Atmar, a witness for appellees, and appellee H. L. McPhail, each testified that the property in question had no market value at the time of condemnation, although on cross-examination J. W. Atmar testified as to various sales of residential property such as the property condemned, both in the year 1936 and in previous years. Witnesses for appellant J. A. Hanna, George C. Elliott, and Grady Waller, each testified that he was a resident of Trinity, that he was familiar with the McPhail property, and that there was a market value for residential property, such as the property condemned, in Trinity at the time of such condemnation, and each testified as to what the market value was with respect to the issue of damages.

In the case of Fort Worth & Denver R. Co. v. Hapgood, Tex.Civ.App., 210 S.W. 969, 971, in passing on the qualifications of a witness to testify as to market value, the court in its opinion says: "Whether it is a fact or an opinion, the necessary predicate is required, and as a rule a sufficient predicate is that the witness is willing to testify that he knows. When he so states, he may give the value. The cross-examination may show insufficient knowledge, and this would only contradict his previous evidence, which contradiction would then be a question for the jury, or, in other words, the weight of the evidence or the credibility of the witness. The admission of evidence of this kind * * * is largely in the discretion of the court."

In the case of McDaniel Bros. v. Wilson, Tex.Civ.App., 70 S.W.2d 618, 622, in passing on a similar question, the court says: "Dr. Wilson testified that he knew of the location of the building, its use, condition, and its value, and the value and condition of contiguous property; he testified unequivocally that he knew the market value of this building. In City of Waco v. Roberts (Tex.Civ.App.) 12 S.W.2d 263, 264, the court said: 'The rule seems to be well established that where a witness states positively he knows the market value of the property in controversy, he thereby prima facie becomes qualified to testify as an expert, and his testimony is admissible as such. Foster v. Burgin (Tex.Civ.App) 244 S.W. 244, and authorities there cited.' The rule thus stated is well supported by the following additional authorities: 19 Tex.Jur. p. 85, § 59; Fort Worth & D. C. R. Co. v. Hapgood (Tex.Civ.App.) 210 S.W. 969; Central State Bank v. Henderson (Tex.Civ.App.) 286 S.W. 518 (writ of error dismissed); Houston L. & P. Co. v. Daily (Tex.Civ.App.) 291 S.W. 317 (writ of error dismissed); Fort Worth & D. S. P. Ry. Co. v. Judd, (Tex.Civ.App.) 4 S.W. 2d 1032 (writ of error dismissed); Murray v. Morris (Tex.Civ.App.) 17 S.W.2d 110

(writ of error dismissed). On the authorities cited Dr. Wilson was qualified to testify on the issue of market value."

In the case of Fort Worth & Denver S. P. R. Co. v. Judd, Tex.Civ.App., 4 S.W.2d 1032, 1036, in a condemnation suit, in passing on the qualification of a witness to give his opinion as to market value, the court says: "The next proposition challenges the ruling of the court in permitting the witness J. M. Mullins to testify as to the market value of the Judd tract of land, over its objection that Mullins was not shown to be properly qualified to give his opinion as to such market value. The witness testified that he knew the market value. He thereby qualified himself to state the value. Davis v. Fain (Tex.Civ. App.) 152 S.W. 218; Central State Bank v. Henderson (Tex.Civ.App.) 286 S.W. 518.

"The appellant did not cross-examine him for the purpose of testing his qualifications, but was content with the objection that the appellee had not shown that the witness, by experience or peculiar knowledge, was qualified to testify. In proving the value of the land, it is not necessary that a witness shall be a real estate broker or a dealer in lands or otherwise qualify as an expert. If he is acquainted with the land in question, owns land of the same kind or character contiguous to the tract in question, or shows that he has a peculiar knowledge of its qualities and value not possessed by the jury, he may be allowed to state his opinion of its value. The objections to such testimony go to its weight rather than to its admissibility."

This rule is followed in 19 Tex.Jur., page 218, in which the author says: "Where a witness swears positively to the market value of an article, the fact that the testimony tends to show that he does not in fact know the market value merely weakens his estimate and leaves it to be weighed by the jury."

And in 19 Tex.Jur., page 214, it is said: "In most cases, the statement of the witness that he knows the value of the property in question will suffice to authorize the reception of his opinion, unless the adverse party should request permission to cross-examine the witness with a view to developing facts going to show that he does not in reality know the value of the property. If such request is made, the court should permit a full examination of the witness before receiving his testimony. If no such request is made, and the witness is not cross-examined as to his qualification, the appellate court will presume that the witness properly obtained sufficient knowledge of the matter to qualify himself."

The record shows that no request was made by appellees to examine the witnesses for the purpose of testing their qualifications and for rejecting their testimony.

Under the above authorities, the testimony of the above witnesses was clearly admissible for the purpose of establishing the fact that there was a market value for such property as that condemned, and under the record appellant was clearly within its rights in requesting that an issue be submitted to the jury as to the market value of the property condemned and in its contention that no issue as to the intrinsic value of such property should have been submitted unless and until the jury, in answer to said issue, had found that there was no market value for said property.

Appellant contends that since the award of the commissioners in condemnation was paid into the registry of the court by the appellant in compliance with the statutes before taking possession of the property condemned, and before entering upon the same, that the damage, if any, sustained by appellees by reason of the manner in which the concrete driveway was constructed, the manner in which fences on appellees' property were destroyed, the fact that the construction of the drainage structure caused water to back up on the highway and overflow upon appellees' property after a rain, and that the surveyors for the Construction Company who built said highway, tore up his garden, and the employes of said Construction Company threw concrete and other refuse over his garden and removed the top soil therefrom, arises out of a tort committed by the contractor in the construction of said highway, and that appellant is not liable therefor.

In the case of Kirby v. Panhandle & G. R. Co., 39 Tex.Civ.App. 252, 88 S.W. 281, 282, the court in its opinion said:

"The court should not have heard testimony one way or another as to the damage to the 100 acres of wheat land caused to overflow by the construction of appellee's embankment. The statute requires every railway company in the construction of

808

its line to provide necessary culverts and sluiceways, and, for any failure so to do, an injured party has his remedy in a suit at law. Such issue is independent of, and should not be confounded with, a condemnation proceeding which contemplates a proper construction and operation of the proposed railway. Gregory v. Gulf, etc., Railway Company (Tex.Civ.App.) [21 Tex.Civ.App. 598] 54 S.W. 617."

In the case of Stephenville, N. & S. T. R. Co. v. Moore, 51 Tex.Civ.App. 205, 111 S.W. 758, the court said: "The error for which the cause must be reversed was in admitting testimony, over the objections of appellant, to the effect that the farm in controversy was damaged by reason of the fact that the company had so constructed its roadbed as to interfere with the natural flow and course of the water on said farm, thereby washing and depreciating the value thereof. It is not contended by appellees, nor does the view seem to have been entertained by the trial judge, that appellant's negligence in this particular would constitute a proper issue in this condemnation proceeding (see Kirby v. Panhandle & Gulf R. Co., Tex.Civ.App., [39 Tex.Civ.App. 252] 88 S.W. 281); but the ruling is accounted for by the explanation of the trial court to the bill of exceptions that the testimony was admitted in rebuttal of the witness Stephen, who had testified for the railway company that the embankment, ditches, etc., made by the railroad company were a benefit to the land, but the statement of facts as made up and agreed to by counsel for both parties does not contain this testimony, and the ruling therefore under the authority cited becomes erroneous."

In the case of Jefferson County Traction Co. v. Wilhelm, Tex.Civ.App., 194 S.W. 448, 451, in passing on a question similar to the issues involved in the instant case, the court in its opinion says: "It seems to be now settled, beyond controversy, by the decisions of the appellate courts of this state, that in a condemnation proceeding, as this was, damages to land not actually taken, and which may result on account of improper and negligent construction of its works by the condemnor, cannot be recovered by the owner of land, or even considered by the court or jury for any purpose, but the owner of the land so damaged would have his recourse in a court or tribunal having jurisdiction of the amount claimed in a proper proceeding instituted for that purpose."

In the case of City of San Antonio v. Fike, Tex.Civ.App., 211 S.W. 639, 641, the court in its opinion says: "In a condemnation suit damages resulting on account of improper and negligent construction cannot be recovered or considered for any purpose. Jefferson County v. Wilhelm [Tex.Civ.App.] 194 S.W. [448] 451. The application of the rule is well illustrated by the case of Gregory v. Railway Co., 21 Tex. Civ.App. 598, 54 S.W. 617, in which the railway company entered upon the land without condemning it, and failed to construct fences, etc. It was held that the damages, caused by such failure, whether resulting from inroads of stock or loss of rental value, could not be recovered in the condemnation suit afterwards instituted by the company."

In the case of Fort Worth & Denver S. P. R. Co. v. Gilmore, Tex.Civ.App., 2 S. W.2d 543, 545, the jury found that the defendant suffered no damage by reason of the construction of the roadbed, but the court nevertheless held that it was reversible error for similar testimony to be admitted and in its opinion says: "Damages which result in cases of this character by reason of the negligent construction of the road cannot be recovered in a condemnation proceeding. * * * While it is true that the jury found that defendant suffered no damages as the result of the defective construction of the roadbed, the court admitted testimony upon the issue showing damages and submitted the issue to the jury, thereby conveying the idea that it was a proper element for recovery, and we think constitutes reversible error. * * * It has been held that even a proper instruction as to the measure of damages does not cure an error in admitting evidence upon an improper measure of damages or element of recovery."

The record shows that the condemnation proceeding was brought by appellant, the City of Trinity, that the amount of the award of the commissioners was forthwith deposited in the registry of the county court prior to the taking of possession of said property by the State Highway Department; that the actual work of constructing the improvements was done by the Gaylor Company under contract with the State Highway Department; and that the City of Trinity had absolutely no control or power over such work or such contract. The testimony complained of was in reference to a condition that exist-

ed either after the construction of the improvements or in reference to the construction of said improvements, and had no bearing on the condemnation suit. Under the above authorities we think that the admission of testimony in reference to damages brought about by the construction of such highway and the admission of testimony in reference thereto was clearly erroneous.

The errors above pointed out require, in our opinion, a reversal of the judgment of the trial court. The other assignments brought forward have not been considered, for the reason they will in all probability not arise upon another trial. The judgment is reversed and the cause remanded.

Reversed and remanded.