## FLOYD COUNTY et al. v. CLEMENTS.

### No. 5289.

Court of Civil Appeals of Texas. Amarillo.

April 7, 1941.

Rehearing Denied May 5, 1941.

See, also, 107 S.W.2d 380.

John Stapleton and Ayres & Ayres, all of Floydada, and Griffin & Morehead, of Plainview, for appellants.

L. G. Mathews, of Floydada, and Crenshaw, Dupree & Milam, of Lubböck, for appellee.

STOKES, Justice.

This suit is a consolidation of two condemnation proceedings. The first proceeding was brought by Floyd County against appellee, in which the county sought to con-

demn for highway purposes 18.72 acres of land consisting of a strip 100 feet wide running diagonally across a tract of approximately 800 acres belonging to appellee. The second proceeding was brought by the State of Texas, acting by and through the commissioners' court of Floyd County, against appellee to condemn .551 of an acre of land to be converted into a drainage ditch leading from a point on the highway in a northwesterly direction a distance of 800 feet. Appeal was perfected from the report of the jury of view in each proceeding and when they reached the county court on appeal the two condemnation proceedings were consolidated. It was admitted upon the trial that all proceedings for the condemnation of the land were in proper form and that appellants had the right in each instance to take the tract of the land under condemnation proceedings and utilize it for the purposes for which the respective tracts had been condemned. The suit in the county court was reduced, therefore, to the question of the amount of damages to which appellee was entitled.

The case was submitted to a jury upon six special issues included in the court's main charge and four additional special issues requested by appellee. In answer to the six special issues submitted by the court the jury found (1) that the market value of the strip of land taken for highway purposes at the time it was taken, considered as severed land, was $26 per acre. (2) That the market value of appellee's tract of land, exclusive of the strip taken for highway purposes, immediately before the strip was taken, was $26 per acre. (3) That excluding increase or decrease of value by reason of benefits or injuries received by appellee in common with the community generally, and, taking into consideration the use to which the strip taken for highway purposes was to be subjected, the market value of the remainder of the 800-acre tract immediately after the taking of the strip to be used as a highway was $22.30 per acre. (4) That the market value of the strip of land taken for the drainage ditch, at the time it was taken, considered as severed land, was $22.30 per acre. (5) That the market value of appellee's 800-acre tract, exclusive of the strip taken for drainage purposes, immediately before the strip was so taken, was $22.30 per acre. (6) That the market value of the remainder of appellee's tract of land immediately after taking the strip for drainage purposes was $22 per acre.

In answer to the four special issues submitted at the request of appellee, the jury found (a) that the reasonable cash market value of appellee's land immediately before the highway was opened was $26 per acre. (b) That the reasonable cash market value of his land immediately after the highway was opened was $22.30 per acre. (c) That the reasonable cash market value of appellee's land immediately before the drainage ditch was taken was $22.30 per acre, and (d) that the reasonable cash market value of his land immediately after the drainage ditch was taken was $22 per acre.

Upon these findings of the jury the court rendered judgment in favor of appellee against appellant, Floyd County, for the sum of $3,343.79 as damages resulting to appellee by the taking of the strip consisting of the right-of-way for highway purposes, and against the State of Texas, acting by and through Floyd County, for the sum of $243.78 as damages resulting from the condemnation of the strip to be converted into a drainage ditch. These items of recovery included the value of the two tracts of land actually condemned and the damages resulting to the balance of appellee's 800-acre tract of land as a result of establishing the road and cutting the ditch. In the judgment the court recited that: "It appearing to the court that while, for descriptive purposes, the tract of land involved is referred to in the special issues as an 800 acre tract, there were actually in said tract, before the road and ditch were constructed through there, 790.9 acres."

Appellants filed and presented to the court their motion for a new trial, which was overruled, and they duly excepted to the judgment and have perfected an appeal to this court.

The principal complaint made by appellants has reference to the manner in which the case was submitted to the jury. They contend that the court erred in submitting to the jury special issue No. 1 requested by appellee because the form in which it was submitted permitted the jury to include the value of the strip condemned for the highway in the damages to the balance of the 800-acre tract of land over which the highway was to run, thus permitting appellee to recover double damages for the strip actually taken for highway purposes. The same complaint is made with reference to special issue No. 3 submitted at the request of appellee concerning the .551 of an acre condemned for the drainage ditch. Special

issue No. 1 requested by appellee is as follows:

"What do you find from a preponderance of the evidence was the reasonable cash market value of the defendant's land in the two preemption surveys and in Section 84 immediately before the highway was opened through said tract of land? You will answer in dollars per acre."

Answer: "$26.00 per acre."

The court submitted the above special issue at the request of appellee, although he had already submitted the same question in a different form under special issues Nos. 1 and 2 of his main charge. Those special issues were as follows:

Special Issue No. 1: "From a preponderance of the evidence what do you find was the market value of the strip of land taken for highway purposes at the time it was taken, considered as severed land? Answer in dollars and cents per acre."

Answer: "26.00 per acre."

Special Issue No. 2: "From a preponderance of the evidence, what do you find was the market value of defendant's tract of land, exclusive of the strip of land taken for highway purposes, immediately before the strip was taken for highway purposes? Answer in dollars and cents per acre."

Answer: "$26.00 per acre."

■ The only difference in the two methods of submission was that, in special issue No. 1 submitted by the court in his main charge, the jury were required to find the value of the strip being taken for a highway, and in special issue No. 2 they were required to find the value of what was left, while, in special issue No. 1 submitted at the request of the appellee, the value of the entire tract before the highway strip was taken was the subject of the inquiry. It will be noted that the answers to all of these issues were entirely consistent and the result in each method was to ascertain the value of the entire tract before the highway strip was taken.

Appellants contend that, by submitting special issue No. 1 requested by appellee, the court permitted the jury to return an answer which gave to appellee a double recovery to the extent of the value of the strip of land taken for the highway or by including therein a portion of the damages to the balance of the land. We do not interpret the verdict as being susceptible of the construction placed upon it by appellants, but even if it were, it is shown very clearly by the record that no double recovery was accorded appellee by the entire verdict of the jury and the judgment entered by the court. If there was a double recovery it consisted of including in the value of the right-of-way a portion of the damages to the remaining portion of the land. Such could not have been the result of the jury's finding in answer to appellee's special issue No. 1 because, in answer to that issue, the jury found that the cash market value of the entire 800-acre tract, before the highway strip was taken, was $26 per acre, and in answer to appellee's special issue No. 2 they found that the reasonable cash market value of appellee's land in the two preemption surveys and Section 84, which constituted the 800-acre tract, after the highway strip was taken, was $22.30 per acre. The only rational interpretation of these two special issues is that the value of appellee's 800-acre tract of land, which included the 18.72 acres taken for the highway, was $26 per acre before the highway was condemned and the value of his land that remained after the condemnation of the highway strip was $22.30 per acre. This simply means that appellants took from appellee 18.72 acres of land which, at the time it was taken, was of the value of $26 per acre, and that the land in the 800-acre tract which remained after the highway was taken from it was of the value of $22.30 per acre. The judgment of the court awarded appellee damages in accordance with this interpretation of the verdict. If further ground is desired upon which to rest the conclusion that the charge of appellants is without a sound basis, and that appellee was not accorded a double recovery, it is found in the answer of the jury to special issue No. 1 submitted in the court's main charge and about which no complaint is made. In this special issue the jury found that the value of the land taken for highway purposes, consisting of 18.72 acres, "considered as severed land", was $26 per acre. Thus it will be seen that the findings of the jury under the two special issues relating to the strip taken for a highway are entirely consistent with each other and any basis for the charge that a double recovery was permitted entirely disappears when the form of special issue No. 1 of the court's main charge is considered. In that special issue the court specifically confined the jury to a consideration of the highway strip "considered as severed land."

■ Appellants assert with much earnestness that, in submitting special issue

No. 1 requested by appellee in the form in which it was submitted, the court was in conflict with the rule that should be followed in submitting such cases laid down by the Supreme Court in the case of State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 196, 979. In that case the court submitted a special issue in which the jury were required to determine the reasonable market value, of a tract of 8.03 acres which the jury found was of the value of $803. In connection with the special issue, the court instructed the jury that the market value of the 8.03 acres was not the market value taken for right-of-way purposes when considered by itself alone, but its market value as a part of the entire tract of which it formed a part. It was this instruction to the jury which the Supreme Court found objectionable. In another special issue submitted in that case the court inquired of the jury as to whether or not the market value of the remainder of the farm had been reduced by reason of the condemnation of the 8.03 acres, and the jury answered in the affirmative. They were then asked to ascertain the amount in dollars and cents that the remainder of the farm was reduced in market value by the condemnation of the 8.03 acres, to which the jury answered $3,477, and judgment was rendered in favor of the defendant for the $803 and also for the $3,477 as found by the jury. The Supreme Court held that, in view of the instruction given to the jury by the trial court, it was obvious that, when the value of the strip was ascertained "as a part of the entire tract of which it forms a part", this necessarily included to some extent a part of the damages to the remaining portion. In support of its holding, the Supreme Court cited the Wisconsin case of Jeffery v. Ry. Co., 138 Wis. 1, 119 N.W. 879–884, in which the Supreme Court of Wisconsin was considering an appeal from the condemnation by a railway company of a portion of the defendant's manufacturing plant. Our Supreme Court said the Wisconsin case was almost directly in point with the case then being considered. It is in order, therefore, to examine that case in connection with the holding of the Supreme Court. In the Wisconsin case a special issue was submitted to the jury in which they were asked to find the fair market value on March 3, 1906, "considering said strip as a part of plaintiff's entire tract and premises as used in his business in question". In considering the special issue, the Wisconsin Supreme Court said: "The jury by the

first question of the special verdict was required to find, not alone the value of the strip taken, but its value as part of plaintiff's entire tract and premises as used in his business. * * * A strip of land taken out of a manufacturing plant might be of great value when considered as a part of the premises as used in the business, while aside from its use in the business, it might be of very small value. * * * If the verdict had confined the jury to finding the market value of the strip taken as a part of the tract, and not as a part of the tract, 'considering said strip as part of the plaintiff's entire tract and premises as used in his business,' it perhaps would not have been subject to criticism under the rule laid down in Washburn v. Milwaukee, & L. W. R. Co., 59 Wis. [364] 375, 18 N.W. 328."

In both the Carpenter case and the Wisconsin case, the juries were required to find the values of the balance of the premises in lump sums and not their value per acre, and, when the juries were required to find the values of the strips taken, considered as portions of the entire premises, and then, in addition thereto, they were required in other special issues to find the amounts of damages, in lump sums, which had been occasioned to the balance of the premises by taking from them the strips condemned, it is obvious that the condemnees had been, or at least may have been, accorded double damages. No such condition is presented by the special issues involved in the instant case. In fact, the special issues submitted by the trial judge in his main charge are in practically the identical language of the model special issues suggested by the Supreme Court in the case of State v. Carpenter, supra. In answer to these special issues the jury found the damages of appellee to be the total sum for which he was accorded judgment. The special issues given to the jury at the request of appellee, while in a different form from those included in the court's main charge, resulted in findings identical with those returned by the jury in answer to the special issues of the main charge. In none of the special issues was the jury required to find the value of the strips condemned "as a part of the entire tract of which it forms a part". They were simply asked to find the market value of the condemned strips immediately before the highway was opened through appellee's land which they found to be $26 per acre. A calculation will show that judgment was rendered only for the value of the land taken, at the price found by the

jury to be its market value, and the amount per acre which the balance of the land had been damaged by taking the condemned strips. It has been consistently held by our courts that this is the true measure of damages in such case. City of Rosebud v. Vitek, Tex.Civ.App., 210 S.W. 728; Routh v. Texas Traction Co., Tex.Civ.App., 148 S.W. 1152; Texas Electric Service Co. v. Wells, Tex.Civ.App., 8 S.W.2d 705; Texas Power & Light Co. v. Jones, Tex.Civ.App., 293 S.W. 885; City of Trinity v. Mc-Phail, Tex.Civ.App., 131 S.W.2d 803; State v. Carpenter, supra.

Appellants contend in this connection that the findings of the jury to the effect that the strips condemned were of the same market value per acre as the balance of the land are, in the first place, ridiculous and irreconcilable, and, in the second place, that they have no support in the testimony. They argue that it is unreasonable to say that a strip of land 100 feet wide across an 800-acre tract consisting of a farm is of the same value per acre as the balance of the farm. The argument is based upon the assumption that the highway strip must first be segregated and set apart from the balance of the land and then, after it has been so segregated and set apart, its general market value should be ascertained. We do not understand the law to require such process. Indeed, the form of special issues laid down by the Supreme Court in State v. Carpenter, supra, precludes such a requirement. The special issues there suggested require juries in such cases to find the market value of the strip condemned for highway purposes "at the time it was condemned". A finding of its value per acre in answer to such a special issue must be based upon the general market value of the land at the very time it was taken and in considering its value, the jury is permitted to consider all of the facts and circumstances that have connection with its location and condition at the time it is taken. The statement of facts consisting of more than 300 pages contains much testimony concerning that particular matter, and we do not agree with appellants in their assertion that the findings of the jury in this respect were either unreasonable or without support in the testimony.

The next contention presented by appellants is that the court erred in assuming that the tract of land involved consisted of 790.9 acres before the strips were condemned for highway and drainage purposes, contending that this was a question of fact which should have been submitted to the jury. The record shows that the tract of land affected by the condemnation proceedings consisted of appellee's farm and pasture lands in the two preemption surveys and Section 84 which was referred to throughout the trial as the 800-acre tract. There was no controversy concerning the exact number of acres and no special issue was requested by either of the parties concerning the exact quantity of land involved. It was made quite clear by the testimony that the land affected consisted of a certain premises including the preemption surveys and that portion of Section 84 which lies east of a certain fence. A calculation of these tracts under competent testimony that was adduced at the trial will show that the court was approximately correct in his conclusion that 790.9 acres was the amount of land actually affected by the condemnation proceedings. Appellants have filed a supplemental brief in which they show a plausible calculation which results in reducing the number of acres to 686.64. The question of the number of acres involved was a component element of the measure of appellee's damages and, as we have said, it was not submitted to the jury in the court's main charge and no request was made by either of the parties that it be submitted. The court made a specific finding to the effect that the number of acres in the tract involved was 790.9 acres. There was ample testimony to support the finding and, since appellants did not request the submission of the issue, they are bound by the finding of the court. Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

In this connection appellants also contend that the claim filed by appellee setting out his damages, when analyzed, reveals that he claimed damages for only 480 acres. There was no complaint as to the pleadings in the case and, as we have already said, the tract involved was repeatedly referred to throughout the trial as an 800-acre tract, which the court found, in reality, was 790.9 acres. The record shows clearly that all parties to the litigation understood that the body of land being considered as affected by the condemnation proceedings was this tract of 790.9 acres. Under these circumstances, no injury could have resulted to appellants and we are unable to find any merit in this contention.

452

Other propositions are presented which complain of the action of the court in admitting certain testimony and in refusing to permit appellants to cross-examine certain witnesses. We conceive of no reversible error that was committed by the court in regard to these matters and do not deem it necessary to discuss them.

After giving careful consideration to all of the contentions of appellants we are impelled to the conclusion that no error was committed by the court below that would require a reversal of the case. The judgment will, therefore, be affirmed.