**TENNESSEE GAS TRANSMISSION CO. v. NILSON et al.**

No. 12331.

Court of Civil Appeals of Texas. Galveston.

Nov. 29, 1951.

Rehearing Denied Feb. 14, 1952.

Chas. C. Ingram, Jr., Wharton, Geo. P. Willis, El Campo, W. V. Ballew, Jr. and Wm. R. Brown, Houston (Ingram & Moore, Wharton, Baker, Botts, Andrews & Parish, Houston, of counsel), for appellant.

J. J. Duckett, El Campo, and W. James Kronzer, Jr., Houston (Duckett & Duckett, El Campo, and Hill, Kronzer & Abraham, Houston, of counsel), for appellees.

GRAVES, Justice.

Plaintiff and condemnor, below, Appellant here, Tennessee Gas Transmission Company, instituted this action against Henrietta Nilson and Elmer Nilson, defendants and condemnees, below, Appellees here, to condemn a right-of-way or easement 30 feet in width and 2,894 feet in length, comprising approximately 1.99 acres of land, across two tracts of land (one containing 69.15 acres and the other 160 acres) owned by the defendants in Wharton County, Texas, for the purpose of constructing and operating a feeder pipeline for its natural gas transmission system.

On appeal to the County Court of Wharton County, Texas, the only issue was the difference in market value of the 1.99 acre

tract comprising the right-of-way before and after the condemnation and the damages, if any, suffered because of the depreciation in value of the remainder of the defendants' property. Judgment was entered, based on a jury·verdict, for the defendants in the total amount of $23,213.50. The plaintiff, Tennessee Gas Transmission Company, duly excepted to this judgment, and perfected this appeal.

The trial court submitted what it conceived to be the controlling fact issues raised by the pleadings and evidence in four Special Issues to the jury, which, together with that body's answers thereto, were these:

"Special Issue No. 1.

"What do you find from a preponderance of the evidence, if any, was the reasonable market value per acre of the 1.99 acres of land in the said right-of-way across the Nilson 69.15 and 160 acres tracts immediately before the same was condemned on the 14th day of November, 1949, and the construction of the gas pipeline thereon?

".To which the jury answered: $300.00 per acre.

"Special Issue No. 2.

"What do you find from a preponderance of the evidence, if any, was the reasonable market value per acre of the 1.99 acres of land in said right-of-way across the Nilson 69.15 and 160 acres tracts of land immediately after the condemnation of the same on the 14th day of November, 1949, and the construction of the gas pipeline thereon?

"To which the jury answered: $50.00 per acre.

"Special Issue No. 3.

"What do you find from a preponderance of the evidence, if any, was the reasonable market value per acre of the remaining acres of the Nilson 69.15 and 160 acres tracts, exclusive of the strip of 1.99 acres of land in the subject right-of-way, immediately before the condemnation of said strip on the 14th day of November, 1949, and the construction of the gas pipeline thereon?

"To which the jury answered: $300.00, per acre.

"Special Issue No. 4.

"Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tracts of land across which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find from a preponderance of the evidence, if any, was the reasonable market value per acre of the remaining acres of the Nilson 69.15 and 160 acres tracts, exclusive of the strip of 1.99 acres of land in the subject right-of-way, immediately after the condemnation of said strip on the 14th day of November, 1949, and the construction of the gas pipeline thereon.

"To which the jury answered: $200.00 per acre."

In protest against the judgment so adverse to it below, appellant presents here four Points of Error, substantially to this effect:

First, there was no evidence to support the jury's answers to such Issues Nos. 3 and 4, because, first, it was impossible from the evidence as a whole to compute and arrive at the figures of $300.00 and $200.00, respectively, so found thereunder;

Second, the jury's verdict as a whole was so grossly excessive on its face as to establish that it was the product of passion and prejudice upon the jury's part;

Further, such verdict was shown to have been reached by majority vote among them, and not by unanimous agreement of all of the jurors.

None of these presentments, it is determined, should be sustained, in the state of the record brought here, upon the appeal.

■ In the first place, because of the nature of the suit—it being a condemnation proceeding against the appellees' lands, in which the appellant was exercising its power of "eminent domain" under the laws of the State—the evidence as to what was

done must, by the courts, be reviewed most favorably to the appellees. Southwestern Gas & Electric Co. v. Anderson, Tex.Civ. App., 217 S.W.2d 47, 51; Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575, 580, writ of error refused, no reversible error; Texas Pipe Line Co. v. Hunt, Tex.Sup., 228 S.W.2d 151, 155, 156, affirming Tex.Civ. App., 222 S.W.2d 128.

■ In the second place, as the maps in evidence make most plain, the narrow strip of land 30 feet in width by 2,894 feet in length (comprising 1.99 acres), cuts across two contiguous or actually adjoining tracts owned by the appellees, for the purpose of laying a 12-inch gas pipeline thereunder, such pipeline to cross both tracts, pictorially showing, as otherwise conclusively appeared from the evidence, that the entire 229.15 acres so owned by the appellees had been condemned, or at least burdened, as a unit, although only the small strip of 1.99 acres therefrom was actually appropriated, or taken.

In this setting, the quoted Special Issues appeared to have been submitted by the trial court, in the form approved by our Supreme Court, in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979.

Neither is it shown that appellant made any objections to such submission of the Issues given and answered, nor did it present any request that the jury's consideration be limited to a determination of damages to less than the 229.15 acres the appellees so owned as a unit, and from which the 1.99 acre small easement was cut out. Texas Power & Light Co. v. Hill, Tex.Civ. App., 27 S.W.2d 842, 843, writ of error dismissed; Texas Electric Service Co. v. Wells, Tex.Civ.App., 8 S.W.2d 705, 707, 708, writ of error refused; Floyd County v. Clements, Tex.Civ.App., 150 S.W.2d 447, 451, writ of error dismissed.

■ In other words, so construing the trial court's theory that the appellees, under the pleadings and the testimony, had been entitled to such damages as the jury might properly find from the evidence they had suffered from appellant's taking not only the small 1.99 acre strip diagonally across their total 229.15 acres as a body, but also the resulting damage to the so bisected residue of the whole, this Court finds no lack of sufficient testimony to sustain the jury's quoted findings.

It would be going beyond the requirements to undertake to restate such evidence, or to even essay a comprehensive résumé thereof, but a number of witnesses, after properly qualifying themselves, testified to the facts so found by the jury.

For instance, such witnesses, and particularly three of them, testified that before this condemnation proceeding was filed, the appellees' entire 229.15 acres had been adapted to, and had a determinable value for, subdivision purposes, which values they severally detailed to the jury, further, that the condemnation proceeding had reduced those values to the amounts so severally found by the jury, in answering the trial court's four Special Issues to them; whereas, the only witness, apparently, who appeared in behalf of the appellant on this feature of the controversy, after having testified at length on direct examination in behalf of appellant, readily admitted, upon cross-examination by appellees' counsel, that, while he was an experienced real estate man, he was "not a subdivision man." It would therefore be profitless to explore further, it is thought, into why the jury chose to accept the estimates of the experienced, subdivision witnesses for the appellees, rather than the inexperienced ideas of a single witness for the appellant.

As a matter of course, if, as appellant's position seems to portend, the jury in this case, through some personal bias or prejudice, put the value of $597 upon the 1.99 acres of appellees' land that was taken, as they did in so answering special issue No. 1, and then, without there having been any material injury to the remaining 227.16 acres adjoining it, put upon such balance the same ratio of damage they had given the 1.99 acres, no court would affirm such a result; but, as indicated, it is held that no such resulting visitation against the appellant has been shown in this record.

■ As indicated, the witnesses who testified to the values so found by the jury, each and all, whom the trial court permitted

to testify, and especially the three referred to, supra, in that connection, testified that they were familiar with the market values of the properties involved in this controversy, and set out what their experience and qualifications were.

In such circumstances, it is well settled that the trial court did not err in holding their testimony to have been admissible State v. Richardson, Tex.Civ.App., 215 S. W.2d 359, writ of error refused, no reversible error; City of Houston v. Schorr, Tex.Civ.App., 231 S.W.2d 740, writ of error dismissed; Wilson v. Barbour, Tex.Civ. App., 135 S.W.2d 169, 171, writ of error dismissed; Leyendecker v. Harlow, Tex. Civ.App., 189 S.W.2d 706, 710, writ of error refused for want of merit.

In other words, under the extended testimony of such witnesses, upon which the jury must have based the quoted findings, much of it was from those who testified, unequivocally, that they based their opinions as to the manner in which such a pipeline as appellant was to construct upon the property here involved would affect its subdivision value upon their personal experience with people purchasing subdivision property, who knew of the existence of a pipeline thereon. In such circumstances, our courts, including this Court, in such cases as Houston Lighting & Power Co. v. Daily, 291 S.W. 317, writ of error dismissed, have held that such objections as appellant made in this instance to such testimony, go to the weight, and not to the admissibility of it. See also Shock v. Mrs. Ragsdale's Foods Co., Tex.Civ.App., 228 S.W.2d 353, writ of error refused, no reversible error.

■ Appellant's concluding presentment to the effect that the verdict of the jury was shown to have been reached by a majority vote, rather than a unanimous one, is overruled without extended discussion. The trial court fully sifted this matter on motion for rehearing, and overruled the contention, filing full findings of fact thereon, from which these excerpts are taken: "* * * I find from the evidence viewed as a whole that the answers to the Special Issues submitted by the court in its charge represent the unanimous decision of all jurors as finally made and determined and I further find that the answers of each juror to each Issue submitted, as finally made to the court after their discussions in the jury room, were not reached by any agreement or understanding between the jurors to the effect that in arriving at the answers made to the Issues, they would be bound or in any manner affected by the vote or the opinion of a majority of the jurors. * * *"

No impeachment, whatever, of any part of the court's findings appears in this record; wherefore, appellant's contention of jury misconduct was in no manner sustained. These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.

MONTEITH, J. C., dissents.

MONTEITH, Chief Justice (dissenting).

I must dissent from the majority opinion of this Court in affirming the judgment of the trial court in the instant case.

From a careful review of the record in the case, I think that the finding of the jury that appellant would sustain damages in the condemnation of the right-of-way sought of less than 2 acres of land in the amount of $23,213.50 is grossly excessive.

Under the judgment rendered in the trial court, the appellant, condemnor, is required to pay damages to the owners of the two acres sought to be condemned as a right-of-way for a covered gas pipeline, a distance of more than one-half mile from the town of El Campo. The amount of the damages rendered is, in my opinion, not justified by the record, particularly since the damages to the land in the vicinity of the right-of-way was based on opinion evidence as to its probable value as the site for a subdivision which might later be laid out in that vicinity. And the record shows that for a number of years there has been an additional pipeline near the location of the right-of-way sought. Further, there is no evidence in the record of the number of acres that would be damaged by appellant's pipeline in the event it is constructed, the distance of the damaged acreage from the

proposed pipeline, or the market value of the acreage which would be damaged.

The absence of proof of these facts, in my opinion requires that the judgment of the trial court be reversed and that the case be remanded to the trial court.